[Civ. No. 4172.   First Appellate District, Division Two.—March 18, 1922.]

## NEWHALL LAND & FARMING COMPANY (a Corporation), et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—LETTER OF INJURED EMPLOYEE TO INSURANCE CARRIER—EXPLANATION OF IMMEDIATE NECESSITY OF OPERATION — REFUSAL TO ACT—LIABILITY OF CARRIER.—Where a letter written by an injured employee to the employer's insurance carrier explained the immediate necessity of an operation, and the carrier was also in possession of the reports of its own physician sent to it at its request, and showing that such operation was necessary, it was the carrier's duty to provide the surgical treatment with all possible diligence, and where it failed to do so within a reasonable time, it was liable under section 9(a) of the Workmen's Compensation Act for the reasonable expenses incurred by the employee in procuring the same.

[2] ID.—LETTER TO INDUSTRIAL ACCIDENT COMMISSION — APPLICATION —STATUTE OF LIMITATIONS.—A letter written by an injured employee to the Industrial Accident Commission stating that a bad case of hernia had developed as the result of the injury and that a physician had avised an immediate operation and asking that the commission look into the matter of the injury constituted an "application" under section 17 of the Workmen's Compensation Act, sufficient to avoid the bar of the six-months period for the commencement of proceedings under section 11 of such act, notwithstanding the carrier was not officially served with a copy of such "application."

PROCEEDINGS in Certiorari to review an award of the Industrial Accident Commission.   Award affirmed.

The facts are stated in the opinion of the court.

Redman & Alexander for Petitioners.

A. E. Graupner for Respondents.

1. Liability of employer or insurance company for medical and hospital aid furnished to injured employee, under Workmen's Compensation Act, note, 7 **A. L. R.** 545.

LANGDON, P. J.—This matter comes before us upon a petition for a writ of review.

Ysmael Olivera was employed in December, 1919, by Newhall Land & Farming Company at a ranch in San Luis Obispo County. The Continental Casualty Company was the insurance carrier. The parties are subject to the provisions of the Workmen's Compensation, Insurance and Safety Act of 1917 (Stats. 1917, p. 831), as amended in 1919 (Stats. 1919, p. 910). Olivera was injured in the course of his employment, by being thrown from his horse while trying to overtake a runaway team on the ranch. This accident resulted in an injury designated by the physicians as a right inguinal hernia.

The Industrial Accident Commission found that medical treatment by Dr. Brown was furnished to Olivera by the insurance carrier, which treatment extended from the time of the injury until some time in January, 1920. Olivera testified, as also did Dr. Brown, that a truss was fitted and it was hoped that the injury might be repaired in time without the necessity of an operation. Dr. Brown testified that at first the truss seemed to give good results, but later, during his treatment of Olivera, it became apparent that an operation was necessary for a permanent cure and he so informed Olivera. He testified, however, that he had no authority from the insurance carrier to perform the operation and would not have done it himself and that he did not tell Olivera who would be engaged to perform this service. From his testimony it is clear that he had no reason to believe that the insurance company would authorize or pay for any operation. He also testified that up until the end of January he considered the truss satisfactory and effective in curing the injury; that he never informed the insurance carrier that a surgical operation was necessary and was never instructed by them to perform such an operation or to make arrangements to have such an operation performed. Olivera went to his home in Santa Maria after Dr. Brown had done what he could for him without an operation. About May, 1920, he consulted a physician of his own choosing, and was advised by him that an operation was necessary and that strangulation was likely to result from the injury unless the operation was performed at once.

On May 28, 1920, as found by the Industrial Accident Commission, Olivera wrote to the Continental Casualty Company, demanding further treatment and stating that it must be had without further delay. The insurance company corresponded with Dr. Brown about the matter and sent Olivera a check for $38.38 as payment in full of all claims growing out of his injury and disability. On June 8, 1920, Olivera returned this check, stating that it could not be accepted in full payment because the injury was causing much pain and trouble; that an immediate operation was necessary, and stated that he was inclosing a copy of a letter which he was that day sending to the Industrial Accident Commission. In this letter to the insurance company he demanded payments due him under the provisions of the Compensation Act.

On the same date he addressed a letter to the Industrial Accident Commission, which has been found by it to be an application within the requirements of section 17(a) Workmen's Compensation, Insurance and Safety Act of 1917. As this matter is the chief point of attack by petitioners herein and must be disposed of in this proceeding, it is necessary to set out such application in full. It reads as follows:

"San Luis Obispo, California, June 8th, 1920.
"Industrial Accident Commission,
   "525 Market Street, San Francisco, California.

"Gentlemen: On December 18th, 1919, I was injured while in the employ of Newhall Land & Farming Company at their Suey Ranch near Santa Maria. I was given medical treatment by Dr. Brown of Santa Maria but without being permanently cured. A bad case of hernia has developed as a result of the injury and it is in such an aggravated state that the doctor who examined me recently (Dr. P. K. Jackson of San Luis Obispo) advises that an operation is necessary and that a cure or relief cannot be expected otherwise.

"The Newhall Land & Farming Co. were covered under their policy No. 48564 issued by Continental Casualty Company through their San Francisco office. The matter has been reported to the aforesaid Casualty Company. Under date of May 5, 1920 their check was transmitted to me for $38.38 and at the same time they requested my receipt and

final receipt. I wrote to them that I could not accept their money under those conditions as my case requires medical treatment but to this letter I have received no reply.

"The doctors advise that an operation be performed without further delay and have arranged to do so on Thursday of this week, June 10th. I am under the care of Doctor P. K. Jackson and Dr. N. J. Shields of this city.

"I would ask that the matter of my injury be looked into by you and that the aforesaid company be directed to carry out the intent of the Workmen's Compensation Act.

"I forward a certificate signed by Dr. Jackson to the office of the Casualty Company with my recent letter to them.

"Thanking you for prompt attention, I am,

"Very truly yours,

"Y. Olivera,

"A."

The Industrial Accident Commission acknowledged receipt of this letter and stated that the insurance company desired time within which to get a report from Dr. Brown and would communicate with Olivera further after receiving such a report.

After the original award of the Industrial Accident Commission was made, a rehearing was granted at the request of the petitioners here, and additional evidence was submitted and amended findings and award made. It was found that no treatment was tendered to Olivera in response to his demand of May 28, 1920, on the insurance company, and no intimation was made to him that such treatment would be furnished or forthcoming, and applicant, therefore, on the fourteenth day of June, 1920, obtained such treatment from physicians of his own selection; that the time intervening between said demand and the procuring of such treatment was adequate to give said defendant an opportunity to tender such treatment had it been so disposed. The Industrial Accident Commission, therefore, awarded to Olivera the reasonable cost of such treatment.

It is contended by petitioners that Dr. Brown, the physician for the insurance company, offered to procure for Olivera an operation several months before it was actually performed, and, therefore, the insurance company is not

liable for the cost of medical attention which he procured
for himself. It is also contended that the failure of Olivera
to accept this offer at the time it was made increased his
period of disability before the operation and also increased
the period of disability after the operation, because the
injury had increased and required more repair and the
operation was, in consequence, a greater drain on the vital
forces. As to this last matter, the commission found that
the disability following the operation was not prolonged
by the failure to have the operation performed earlier.
Section 67, subdivision c, of the Compensation Act provides
that the findings and conclusions of the commission on
questions of fact shall be conclusive and final and shall not
be subject to review. The objection that Olivera's hesi-
tancy about an operation had increased the period of dis-
ability prior to the operation was recognized by the com-
mission and met by its award and by its findings, which
recite that ''by reason of the injury the applicant was
totally disabled from the date thereof until April 25, 1920,
a period of 18 3/7 weeks and is entitled by reason thereof to
a weekly payment of $12.83 for 17 3/7 weeks, amounting to
the total sum of $223.43, said weekly payments being based
upon monthly earnings of $90. Said disability also con-
tinued after April 25, 1920, but at said time the defendant's
physician had tendered to the applicant a surgical op-
eration for the cure of said hernia and the applicant neg-
lected and refused to submit thereto, or to accept such
operation, and the same was not performed until June
14, 1920. Such refusal was unreasonable and proximately
caused disability from said 25th day of April to said 14th
day of June, 1920, and applicant is not entitled to com-
pensation for said period.''

Allowance of $93.50 was made to the surgeon performing
the operation, which was a substantial reduction of his bill
appearing in the record for the sum of $261. An allow-
ance of $158.85 was made for hospital bill and $24 for a
nurse. All of these sums seem exceedingly reasonable upon
the record before us; indeed, petitioners do not contend
that they are unreasonable.

[1] As to the contention that Olivera is not entitled to
the reasonable cost of medical attention because Dr. Brown
suggested and offered him an operation, which he refused,

we think this objection is satisfactorily met by the findings of the commission regarding the failure of the carrier to furnish Olivera surgical treatment at the time he became convinced of its necessity and demanded such treatment of said insurance company. The record discloses that at first Dr. Brown did hold out hope to Olivera of a recovery without an operation. Olivera is a working man, uneducated, and who speaks little English. He had the usual and natural aversion of such a person to an operation. In addition to this, he was a man of the age of about sixty years. He endeavored to effect a cure without surgical treatment. Dr. Brown encouraged him in this at first, according to Dr. Brown's own testimony. When it seemed that an operation was imperative and Dr. Brown so told Olivera, Dr. Brown was not authorized by the insurance company to perform it, nor to secure anyone to perform it. He was not himself practicing major surgery, and he stated that he would not have taken the responsibility of the operation. He did not tell Olivera who would be secured to perform the operation. Olivera was not required to accept the services of the first surgeon offered under the provisions of section 9 of the act. The insurance company was not notified at that time of the necessity of an operation and never tendered such treatment to Olivera nor authorized anyone to do so on its behalf. Olivera returned to his home at Santa Maria, still hoping to effect a cure and desirous of avoiding a surgical operation, if possible. He was not awarded compensation for this period when he cherished the forlorn hope of a cure without an operation, so the insurance company was not injured in any way by his indecision and natural reticence about this matter. When the absolute necessity of an operation became apparent to him, he called upon the insurance carrier for further treatment, explaining the necessity for an operation. Had the insurance company responded at this time with a reasonable offer of proper treatment, its argument on this question would be more convincing; but it did not do so, nor give any intimation that it would allow Olivera more than the $38 tendered to him at that time. He was in imminent danger and he had no choice but to select a surgeon and submit to the operation. Section 9(a) of the Compensation Act provides that in the event of the

neglect or refusal of the employer seasonably to provide medical, surgical, and hospital treatment, he shall be liable for the reasonable expenses incurred by the employee in procuring the same. Olivera's letter to the insurance carrier explained the immediate necessity of an operation. Also, the company was in possession of the reports of Dr. Brown, its own physician, sent to it at its request, and showing that such an operation was necessary. We think that under such circumstances it was its duty to provide the surgical treatment with all possible diligence, and it is found by the commission, and the evidence supports the finding, that it did not do so within a reasonable time.

[2] The only other objection of petitioners is to the "application" hereinbefore set out. It is contended that this is not an application in proper form; that service of same and a hearing thereon were not had as provided in section 17 of the act. It is further contended that the commission did not regard this letter as an application and that the hearing was not proceeded with until after a more formal application had been filed by an attorney for Olivera. This formal application was not filed until December 19, 1920, which was too late under the provisions of section 11 of said Compensation Act. Unless, therefore, the letter of June 8, 1920, hereinbefore set forth, can be regarded as an "application" the employee is barred from all relief. Let us examine the facts with reference to the filing of the two applications: On June 8, 1920, Olivera, realizing that he could not recover from his injury without further treatment, went to a friend and had him write a letter to the Industrial Accident Commission, setting forth the facts and Olivera's need for further medical and surgical treatment. This is the letter which has been construed by said commission, in making its award, as an application. No results having been accomplished by this letter, Olivera, being uninformed as to the nature of proceedings before the commission, went to an attorney who had had nothing to do with the earlier letter and was probably uninformed thereof and uninformed of the status of the entire matter, and this attorney filed a formal application in December, 1920. Later, when the full facts were disclosed to another attorney who represented Olivera at the hearing, said attorney insisted, on behalf of his client, that the letter of

June 8, 1920, was an application within the meaning of the Compensation Act and that it should be so regarded, and the commission agreed with this position. If this letter is sufficient as an application, the objection of petitioners that the claim is barred is without merit.

Section 17 of the Compensation Act, as amended in 1919, provides that: "Upon the filing with the commission by any party in interest, his attorney, or other representative authorized in writing, of an application in writing stating the general nature of any dispute or controversy concerning compensation, or concerning any right or liability arising out of, or incidental thereto, jurisdiction over which is vested by this act in the commission, a time and place shall be fixed for the hearing thereof, which hearing, unless otherwise agreed to by all the parties thereto, must be held not less than ten days nor more than thirty days after the filing of such application." Section 11 provides that the period within which proceedings for the collection of compensation may be commenced in a case like the present one is six months.

It would seem that the filing of the application in writing stating "the general nature of the dispute or controversy concerning compensation, or concerning any right or liability arising out of, or incidental thereto," would "commence proceedings" within the meaning of section 11, in so far as the applicant is concerned; any action which the commission might take or not take after that assuredly cannot be chargeable to him and should not destroy his rights. Most particularly is this true in view of the expressed purposes of the Compensation Act and the spirit in which it has always been construed and applied by our courts. The letter of June 8, 1920, assuredly stated fully the matters required to be stated in an application; the commission has accepted it as an application within the meaning of the Compensation Act, and we agree with the contention of said commission that any clerical inadvertence in overlooking this application, as such, for a time, should not be visited upon the injured employee who has no control over the administration of the offices of the commission and who has done all that is required of him by an act essentially and primarily enacted for his benefit and protection.

The insurance company argues that it was not officially served with a copy of this "application," if this letter is to be regarded as such. But it was informed of the application, whether formally or informally, and so it was not prejudiced in any way. Olivera's letter to the commission, written on June 8, 1920, recites that there is inclosed a copy of the letter sent to the Industrial Accident Commission (the application). On June 18, 1920, the insurance company wrote to Dr. Brown in connection with the case and stated in that letter: "We understand this matter is being referred to the Industrial Accident Commission." There were communications between the Industrial Accident Commission and the insurance carrier regarding this application, and there is not the slightest doubt that the insurance carrier was fully informed about the fact of the application having been sent to the commission, and the contents thereof. While it is true that the matter was not brought to a hearing within thirty days after the filing of this application, the section of the Compensation Act governing this matter provides that it must be brought to a hearing within thirty days after the filing of the application "unless otherwise agreed to by all the parties thereto." As this matter is one in which the commission and not the employee is to act, any neglect or oversight of the commission should not prejudice the employee, under our view of the general equitable purposes of this act. Furthermore, there is evidence in the record from which it may be inferred that the delay was by agreement of the parties—or at least by agreement of the parties complaining of the same here. For the record contains a letter from the Industrial Accident Commission to Olivera, dated June 14, 1920, acknowledging receipt of the application of June 8th, and stating that the insurance company had informed the commission that it was in communication with Dr. Brown about the case and would take up the matter further upon receipt of a report from Dr. Brown. The inference is certainly permissible that the delay was at the instance of the insurance carrier and for its benefit, to enable it to more thoroughly investigate the case and determine what its attitude in the matter should be.

Under all the circumstances of this case and after a very full and careful reading of the entire record, we find no

errors in the proceedings which would justify us in reversing the award of the commission. Any informalities which may have occurred would not invalidate the award herein made, in view of the provisions of section 60 of the act we are considering; and, furthermore, as we have stated, if any such informalities occurred, we do not see that they were prejudical to the petitioners here.

The award of the Industrial Accident Commission is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 13, 1922, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 15, 1922.

All the Justices concurred.

Waste, J., was absent and Richards, J., *pro tem.*, was acting.