## SECORD v. ST. PAUL, M. & M. RY. Co.

*(Circuit Court, D. Minnesota.   October 9, 1883.)*

1. PERSONAL INJURY—WHO IS A PASSENGER.

    The plaintiff, while traveling in a freight train on the defendant's road, was injured by a collision.   The defendant provided a surgeon, but there is a conflict of testimony as to the advice and treatment rendered the plaintiff by him. The plaintiff seeks compensation for the injury.   The only question at issue is the amount of damages for which the defendant is liable.   The court, in charging the jury, held, that if the plaintiff was on the car in which the defendant allowed people to travel, with the knowledge of the defendant or of any of its agents, for the purpose of being transported, and was properly there, he was a passenger; and the defendant was bound to use all fair means in its power to transport him safely.   Whether the plaintiff had a ticket or not was immaterial. The defendant is liable for any negligence on its part whereby the plaintiff was not transported safely.

2. SAME — NEGLIGENCE OF ATTENDING SURGEON — RESPONSIBILITY OF RAILWAY COMPANY.

    A railroad company having assumed to furnish a surgeon for passengers injured thereby, its duty to the plaintiff is discharged when it provides a surgeon possessing only ordinary skill; and for any damage caused the plaintiff by the negligence of such surgeon, the surgeon, and not the defendant, would be responsible.

3. CONTRIBUTORY NEGLIGENCE—BURDEN OF PROOF.

    That for any neglect of the plaintiff after the injury sustained, causing additional damage to himself, the defendant would not be liable.   The burden of proving contributory negligence on the part of the plaintiff is upon the defendant.

4. MEASURE OF DAMAGES.

    That in estimating damages the jury should consider the loss of time and the suffering caused the plaintiff in the past, and that which will probably be caused him by the injury in the future; also, the injury to his health and bodily strength, including in the latter the effect the injury might have had upon his ability to labor, both in the past and in the future.

This was an action brought to recover damages for injuries received by plaintiff in a collision which occurred on the defendant's road. There was no dispute as to the fact of the collision, nor that the plaintiff was injured thereby; but the conflict arose as to the amount of injury to the plaintiff for which the defendant was liable.   The testimony upon that point was in conflict.   The plaintiff's testimony was to the effect that his collar-bone was broken in the collision, and was set by a surgeon sent there for that purpose by the railroad company; that in obedience to the orders of the said surgeon he went the next day to St. Paul, and remained under his care for the space of 19 days; that at the end of that time, believing that the bones were not united, he went to the said surgeon's office, who, after examination, said it was all right, and that the injured shoulder was as good as the other one.   Plaintiff then asked him if he could return to his home in Canada the next day, a two-days' journey, and the doctor answered in the affirmative; that relying on all these statements he left St. Paul the next day, and on arriving home consulted his physician, who found that there was no bony union formed; that he has suffered

great pain and partial loss of the use of said arm ever since. On the part of the defendant, the attending surgeon for the railroad company stated that when the plaintiff came into his office he was very nervous, and stated that he believed his shoulder was broken; that he examined the fracture; he told the plaintiff that his arm was doing well, but would require two weeks more time, and that he could not leave for two weeks; that he removed the bandages, put the plaintiff's arm in a sling, and told the plaintiff to return to the hotel, and that he would call the next day and replace the bandages; and that on his coming the next day to do so he found that the plaintiff had started for Canada. Medical witnesses for the plaintiff deposed that on the plaintiff's arrival in Canada there was no bony union, but merely a ligamentous one. The attending surgeon stated that at the time the plaintiff left St. Paul a bony union was in process of formation. On the trial of the case the experts, after an examination of the plaintiff, stated that a bony union had then formed; that there was a lapping of the bones, and a bending, but that the same was not serious.

*C. K. Davis*, for plaintiff.

*Bigelow, Flandreau & Squires*, for defendant.

SHIRAS, J., (*charging jury.*) In the case which is now before you the plaintiff, Horatio Secord, seeks to recover from the defendant, the St. Paul, Minneapolis & Manitoba Railroad Company, damages for injuries alleged to have been received while he was a passenger upon the cars of the defendant company on or about the twenty-eighth of May, 1882. The damages claimed in the case amount, I believe, to the sum of $10,000.

I have been asked to instruct you upon the question of the position that the plaintiff occupied towards the defendant when he was in the caboose at the time he received the injury. Now, the undisputed evidence in the case, and the admissions of the defendant, show that the plaintiff had gone upon the cars of the defendant company for the purpose of being transported over the line of its road to some given point upon that road, and that he had some merchandise, and some teams and farming implements, and other matters of merchandise, upon this train. He was directed, according to his testimony, to get upon this train as the proper one to proceed upon towards the place of his destination. The undisputed evidence shows at the time of the accident there was a caboose, as it is sometimes called, or car that was used upon these freight trains, when people are permitted to travel in them at all. If the plaintiff was on that car with the knowledge of the defendants, or any of its agents, for the purpose of being transported over the line of its road, and was properly there, he was in the position of a passenger, and occupied the position of a passenger; and it is immaterial whether or no he had a ticket, and whether or no he had, at the time of the accident, paid his fare. These things would not defeat his being a passenger, because it is

evident that at the time he got upon the train for the purpose of being transported upon it he might have had a ticket, and the conductor might not have got round to him to collect his fare or ticket. In consideration of his being transported by the defendants as a passenger, the defendant has a right to collect fare therefor, and the mere fact that the plaintiff might not have handed his ticket over to the conductor, provided he had one, or might not have actually paid his fare, would not defeat his right or claim that he was a passenger. Of course, I am ruling this upon the facts of this particular case, as they are before you, upon which there is no claim made but what the plaintiff was going upon the cars of this company for a proper purpose. There are sometimes cases that arise from persons going upon the cars of a company when they are stealing a ride, in which the payment or non-payment of fare might become material, and in cases of that character a different rule may obtain. But in this case, as a matter of law, I instruct you that if the plaintiff was on the cars to be transported thereon, the fact as to whether or no he had a ticket makes no difference; he was a passenger, and that would create a liability between the plaintiff and this defendant, and the obligation that arises from the railroad company defendant towards its passengers. In other words, there would be then imposed by that fact upon the defendant corporation the duty and obligation of safely transporting the plaintiff as a passenger, because this railroad company has engaged, among other things, to convey passengers; and, as far as passengers are concerned, the defendant, being in the business of conveying them, is bound to exercise a high degree of care and diligence towards them with regard to providing them with safe transportation. The duty is imposed upon railroads of safely transporting their passengers, and the law, as applied to carriers, compels them to use a high degree of care in seeing that their passengers are safely transported, and it is their duty to see that their tracks are in proper condition and properly cared for, and that the trains are in proper order and properly run, etc.

If there is any negligence on the part of the railroad company, by reason of which a passenger is injured, then the passenger has a right to claim his damages that are caused thereby from the railroad company. On the other hand, if an accident happens from something that is not the fault of the railroad company, and something beyond its control, and no negligence can be attributed to them at all, in that case it would be a pure accident, and, in the older language of the law, it might be attributed to the act of God, and the company would not be responsible.

Now then, gentlemen, what do you find the facts to be under the evidence in this case? Was this plaintiff a passenger upon the train? If so, he was entitled to be safely transported, and the duty lay upon the company to use all fair means in its power to carry him and transport him safely over the line of its road. There is no dis-

pute as to the time or fact of the accident, and that the plaintiff was injured. Was that fact the fault of the railroad company? Was that caused by negligence or want of care on the part of the railroad company? If you find from the evidence that the accident was caused through the fault or negligence of the company, and that by reason of that there was a failure to carry out its contract for safe transportation, and the accident happened, and injury was caused thereby to the plaintiff, then, under the law, the plaintiff would be entitled to recover for the injury sustained by him. In case you so find, you will apply the rule of damages that applies to cases of this character, as to which I will instruct you. But before I pass to the general rule that is applicable to this case as to the general elements of damages, there are one or two other questions to which I will invite your attention.

A question has arisen, and has been made in the progress of this case, in regard to the consequences to the plaintiff of this accident, growing out of the question whether it is all attributable to the accident itself that happened upon the railroad company's line, or whether the injury to the plaintiff has been aggravated by any surgical or medical treatment received after the injury was inflicted upon him. The facts show that Dr. Murphy, a physician and surgeon employed by the company and under its pay, took charge of the case of this patient. I do not say immediately, for there was another physician, but we may drop him out of the question. The plaintiff in the first place came down to St. Paul, and was under the care and charge of Dr. Murphy. The evidence shows, and there is no dispute upon that, that Dr. Murphy was the surgeon of this defendant railroad company; and the proposition upon which I propose to instruct you is whether the company would be responsible for any damage or injury caused to the plaintiff, or any aggravation of the injury received through any neglect on the part of Dr. Murphy in the performance of his duty in the case. Upon that proposition the law is this; that this railroad company having assumed to furnish a physician—a surgeon—it has taken upon itself the duty and obligation of furnishing a competent surgeon, and not beyond that. If it assumes the responsibility of engaging a surgeon, and placing him in charge of parties that may be injured, and sending him to their aid, so that these parties may place themselves under the care of this physician or surgeon, then it is responsible thus far: that the person it selects must be a competent man; he must be reasonably fitted for the duties which he is called upon to perform. In other words, it will not do for the company to take up some incompetent man, who is not fit by education or experience to undertake the responsibilities of any case that may be placed in his hand. If it does engage a physician and surgeon who is sufficiently experienced, that is all that can be expected of the railroad company, and is all of its liability.

It must be remembered that the company is not obliged to engage

the very highest and best talent that can be engageo, but it must engage a man who is reasonably competent in his profession, so that he would be an ordinarily competent man, having ordinary knowledge and skill to perform the duties placed upon him. These are the duties that are assumed by the company. A competent man being in the employ of the company, his services are offered by the company to attend to the injured party. The person that is injured is not compelled to accept his services; he may prefer to go elsewhere. There is a difference between a person whose services are offered, that may or may not be accepted, and a conductor or brakeman that are put on the train, and whose services we must accept. When a man goes upon a train he has no choice about the conductor, brakeman, or anything else. The company assumes that they are responsible for the performance of their duty in such respects. But with regard to a surgeon of that character, the plaintiff could have refused to take him as his surgeon, and could have taken any other surgeon, as he deemed it best to do. So that, as I have instructed you, the duty of the company is performed, and it has performed all that the law requires, when it furnishes a competent man, and he is ordinarily competent for that duty.

Now, he may be an ordinarily competent man, and yet in the attendance upon any particular case that he undertakes, he may be negligent. He may be negligent in that particular case, and neglect his duty therein, though he may generally be ordinarily competent. If that be true, and you so find the facts to be in this particular case, that when treating the plaintiff as a physician and surgeon Dr. Murphy was negligent in the performance of his duty,—if you should find that from the evidence,—then you must determine whether Dr. Murphy was a competent man, and was a proper and responsible surgeon for the company to engage as such; and if you find that the company performed its duty in that regard, that is all that could be required of it.

If, on the other hand, he was an incompetent man, (I don't understand, however, that that is claimed under the evidence in this case,) then there would be a responsibility resting upon the company; but if he was competent, and then he was negligent in what he did in that particular case, then he himself is·responsible for the damage caused thereby. If he did not properly treat the plaintiff in this case, and failed to do his duty in this instance, and thereby the injury to the plaintiff has been increased, for the damage caused by this negligence, if any, Dr. Murphy is responsible himself; the liability would be upon him, and he would be liable to the plaintiff in damages, if you should find those were the facts. But the company would not be liable, because it had performed all the duty that is incumbent upon it when it selected a proper and competent man, and held him out for these parties to employ if they saw fit. Therefore, upon this

first proposition, it is for you to determine whether this Dr. Murphy was a proper and competent man, and had the proper amount of ordinary skill to perform the duties required of him. If not, the company would be responsible for the consequences. But if you find, under the evidence, that Dr. Murphy was a competent and proper man, and the company was not at fault in engaging his services, the question would be, was he negligent in that particular instance? Upon that point, if the evidence satisfies your minds that he was negligent, and that by reason of such negligence and want of care he increased the damage of the plaintiff, the company would not be responsible for the increased damage, but the plaintiff must for that damage look to Dr. Murphy himself.

Now there is another proposition presented, and I am requested to charge you upon it, and that is as to any increased damage caused to the plaintiff by the negligence of the plaintiff himself, if any there is. You will understand that in charging upon these propositions I am not stating propositions of fact; the facts you are to pass your opinions upon; I am only expressing my views of the law to you. The duty is placed upon all parties situated as the plaintiff was, who receive an injury in that way, when they are being transported by a railroad company,—the duty is placed upon them to exercise due care upon their part after receiving the injury. The same rule applies to them that applies to all ordinary cases. Now it is well settled in all ordinary cases that the duty and obligation is laid upon the party who receives the injury to see that the amount of damage is not increased by any negligence or want of care on his part. To use an illustration that comes to my mind: take the case, for instance, of a man who has an insurance policy upon his stock of goods, and a fire happens. He has a right to recover of the company for remuneration to the amount of his policy. But a duty is placed upon him to see that the damage is not increased in any way; in other words, he must do all that he can to protect his goods, and do all that he can to save them from injury. It would not do for him to abandon them because his stock of goods is insured, and because they are partly destroyed, simply say, "I have got an insurance that covers them," and leave them to be burned. The duty is upon him to keep the damages down as low as possible. The same rule applies to all cases of the kind. If the plaintiff was injured, and he had a right to look to the company for damages that were caused to him, still he must use care in the matter of that injury. He must not be careless, and he must not do anything that will increase the injury to himself by his own fault and negligence; in other words, he must use due care. Therefore, if it be true that the plaintiff, by negligence on his part, did increase the amount of damage and injury he received, then for that additional damage he cannot hold the company responsible, though they might be responsible for the first accident, and for the injury directly caused by it. If it be true that the plaintiff, by undertaking

this railroad journey to Canada, thereby increased the injury and damage to the broken bones, and if he undertook that journey under such circumstances that he should not have done so in the exercise of due care, and it was a journey that he ought not to have undertaken, and the probabilities were that it would increase the danger, and in consequence of that trip he increased the injury he had received, then he would be guilty of contributory negligence, and for the damages thus occasioned the company would not be responsible. The burden of proof is upon the company to satisfy you, by a fair preponderance of the evidence, that that is what increased the damages, and that must be done by a fair preponderance of the evidence. You must be satisfied by a fair preponderance of the evidence that the damage was so increased, and if you are not, the plaintiff cannot be held responsible therefor, unless the damages are shown to be due to the neglience of the plaintiff himself. Now, in determining or passing upon this question of the negligence of the plaintiff, it is not sufficient to show that he undertook the journey, and there were some injurious results that happened, because it would be requiring too much of the plaintiff to hold him responsible just by reason of that fact; but other things must concur. That is to say, the plaintiff must have known, or by the exercise of ordinary care should have known, that it would be negligent for him to undertake the journey. If he knew that it would be negligent to do so, and yet determined to take the risk and run the chances himself, he ought to bear the result of his own negligence, and not the company. As I have already stated, you must be satisfied by a fair preponderance of the evidence that he so increased the damage, or else this instruction I am giving you has no weight in the case. You will therefore determine whether there was an increased injury as the result of said journey. Now it may have been imprudent to have undertaken the journey, and yet he may have undertaken and performed it, and no increased injury resulted; then that does not excuse the company. On the other hand, there might have been increased injury by reason of this journey, and it might have been undertaken under such circumstances that plaintiff was not chargeable with negligence in undertaking it.

The general rule, gentlemen of the jury, in regard to the rule of damages is this: If you find from the evidence that the plaintiff is entitled to damages, in the first place he is entitled to reasonable compensation for the pain and suffering he has undergone and endured, and still endures, in consequence of the injuries that are chargeable to the company,—the pain and suffering in the past, and the pain and suffering he is liable and likely to suffer in the future. Secondly, he is entitled to compensation for the loss of time that has been occasioned to him. If you find that he was detained here in St. Paul so many weeks, and was unable to prosecute his usual affairs, and it created a money loss to him, an actual pecuniary loss, he is entitled to compensation for that; he is entitled to fair compen-

sation for the loss of his time. Then he is also entitled to compensation for the injuries to his health and bodily strength; in other words, if you find from the evidence in the case that this injury, for which you find the company is responsible, has affected his health or affected his bodily strength in the past, then he is entitled to compensation therefor. And if you find that these are liable to continue in the future; if you find that the injury to his health and the injury to his bodily strength is to continue for any time,—he is entitled to compensation for that. This idea of injury to bodily health includes the effect it may have either in affecting his ordinary health, or his capacity and ability to labor. If, by reason of this negligence on part of defendant and the consequent damage, he is rendered less able to carry on any business or avocation that he might otherwise have been engaged in, that causes a pecuniary loss to him. You will take into account, therefore, the injury to his health as directly affecting the bodily strength of the plaintiff, and also as affecting his ability to labor, both in the past and in the future, provided you are satisfied from the evidence that this injury will continue any time in the future, and the plaintiff is entitled to pecuniary compensation therefor.

I do not think there are any other general elements of damage which you can take into consideration. Frequently there are actual expenditures that have been made for the services of physicians and attendance, and if the plaintiff has proved any such he would have been entitled to recover that also. But there is no evidence that any such expenditures have been made, and this plaintiff has produced no evidence upon this subject, so you cannot allow this matter, because there is no evidence to show that the plaintiff has suffered any loss in that regard, or has made any expenditures therefor. In a general way, as I have already stated, the elements of damage which you are to take into consideration will be the pain he suffered, the loss of time, the injury to his health and bodily strength, including in the latter the effect it may have had upon the plaintiff's ability to labor and carry on his business, both in the past and in the future.

Now, these are the elements you are to take into consideration, and you are to determine in this case the amount of injury that has been caused to the plaintiff by the fault of the company defendant.

As I said before, if you find that these damages have been increased or aggravated on account of or through the negligence of the physician, under the instructions I have given you, or by reason of the negligence of the plaintiff himself, the defendant in that case is not responsible for that increased injury. If you find that any portion of the damages to the plaintiff has been increased or aggravated by the negligence of the physician, or by the fault of the plaintiff himself, then the damages that have been shown to be occasioned to the plaintiff by the defendant in the first instance is all that the defendant would be responsible for.

You will determine in the first place the amount of injury that the defendant is held responsible for, and, having determined that, you will estimate in your judgment what would be a fair amount to compensate him for the injuries he has received through the negligence of the defendant. That is all you will take into consideration, and you will give this case your careful attention in the consideration of these matters. The amount of the damages is not to be increased or diminished by reason of the fact that the defendant is a corporation. This case must stand upon its merits, irrespective of the position of the parties, and the defendant should stand in no unfair position before you, but is entitled to justice the same as if it were an individual.

You will take the case and give it the consideration which the importance of the case deserves, and render such a verdict as the evidence warrants, using your own sound judgment in determining this matter between the parties.

The jury rendered a verdict of $7,500 for the plaintiff, and the defendant moved to set aside the same on the ground that the damages were excessive.

See *Waterbury* v. *New York C. & H. R. R. Co.* 17 FED. REP. 671, and note, 674; *Keep* v. *Indianapolis & St. L. R. Co.* 9 FED. REP. 625, and note, 629.