### AETNA LIFE INS. CO. v. WATTS.

No. 19657. Opinion Filed Feb. 24, 1931.

Rehearing Denied March 24, 1931.

H. O. Thurman (Byrne Bowman, of counsel), for plaintiff in error.

Billups & Billups and McDaniels & Jackson, for defendant in error.

ANDREWS, J. J. W. Watts, defendant in error, hereinafter referred to as plaintiff, brought an action in the district court of Oklahoma county against the Aetna Life Insurance Company, plaintiff in error, hereinafter referred to as defendant, Mead Bros., and Dr. Von Wedel to recover a money judgment for personal injury. At the conclusion of the evidence of the plaintiff, the plaintiff voluntarily dismissed the action as to Dr. Von Wedel, and the demurrer of Mead Bros, to the evidence of the plaintiff was sustained. The issues between the plaintiff and the defendant were submitted to a jury, and judgment on the verdict was entered in favor of the plaintiff and against the defendant, from which the defendant appealed to this court.

The facts, as shown by the record, con-

cerning which there is no dispute, are substantially as follows: The plaintiff while in the employ of Mead Bros. was engaged in drilling an oil well, and while so engaged suffered an injury to wit, a broken leg, under circumstances entitling him to compensation under the provisions of the Workmen's Compensation Act, (Comp. St. 1921, sec. 7282, et seq. as amended.) The defendant was the insurance carrier for Mead Bros. The plaintiff was taken to a private hospital in the town of Seminole, where he was given treatment and where he remained for 17 days under the care of Dr. Martin, a physician and surgeon employed by the defendant. At the end of that time he was taken from the hospital, placed in an ambulance, and transported over the rough and muddy streets of the town of Seminole to the depot. He was there placed upon a train and transported to Oklahoma City. Here he was placed in an ambulance and transported to St. Anthony's Hospital. He was there given further treatment by Dr. Von Wedel.

The plaintiff alleged, among other things, that the defendant, "its agents, servants, employees, for itself as said insurance carrier and as the agent of the defendant Mead Bros., without any just cause or reason, but with a malicious and wanton purpose of injuring this plaintiff and avoiding the hospital fees at the said Emergency Hospital and the charges of the said Dr. J. A. Martin, the said attending physician, and in order to place said plaintiff under the care of the defendant Dr. C. Von Wedel, who was the agent of and retained by said defendant, the Aetna Life Insurance Company in the treatment of persons who were injured in the employment of corporations for which it furnished liability and compensation insurance and thereby making it cheaper for treatment for the said Aetna Life Insurance Company, and acting for itself as insurance carrier and as agent for the defendant Mead Bros., and in utter disregard of the rights and welfare of this plaintiff, and in a negligent, wanton, and inhuman manner directed and required this plaintiff, on the said 14th day of April, 1927, at a time when said wound and injury was healing and was without pain to this plaintiff, but requiring absolute rest and quiet, to be transported over the streets of Seminole unaided, which were rough, containing deep holes and fissures, to the depot of the Rock Island Railroad Company and there transported to Oklahoma City and to the St. Anthony's Hospital for further treatment by the defendant Dr. C. Von Wedel, agent and employee of the defend-

ant, the Aetna Life Insurance Company." The plaintiff further alleged that he "suffered great and excruciating pain and mental anguish" and that "said break of said bones which had heretofore been healing, disunited by reason of the said rough and inhuman transportation and were out of line and overlapping each other." He further alleged, "All of which caused by the wanton, malicious, negligent, and inhuman conduct of the said defendants, Mead Bros. and the Aetna Life Insurance Company, its agents, servants, employees and vice principals in the moving said plaintiff from the said hospital at Seminole to the hospital at Oklahoma City, in his condition as aforesaid."

The defendant demurred to the petition and then filed its unverified answer in the form of a general denial, therein admitting certain facts not necessary to be herein set forth. It alleged that everything that was done by it was "for the purpose of alleviating the pain of the plaintiff, improving his physical condition and restoring him to health." It further alleged that the defendants gave to the plaintiff at all times "the benefit of careful, conscientious, and diligent attention and provided him with trained nurses, good hospital accommodations, and such other things as were necessary to diminish his pain, improve his physical condition, and cure him of the disorders and injuries from which he was suffering," and, in addition thereto, provided him with all the benefits and rights to which he was entitled under the Workmen's Compensation Act, which the plaintiff voluntarily accepted.

The claim of the plaintiff for compensation under the provisions of the Workmen's Compensation Act was filed with the State Industrial Commission and compensation was paid the plaintiff by the defendant until after this action was commenced, at which time payments were suspended and an order was made by the State Industrial Commission staying further proceedings pending this trial.

As stated by the plaintiff in his brief, the cause was tried "* * * in compliance with the rule as declared by Justice Lester in the case of Walker v. Von Wedel, 108 Okla. 292, 237 Pac. 86." Under that theory and the allegations of the plaintiff, the trial court, over the objections of the defendant, permitted the plaintiff to introduce evidence as to his treatment by Dr. Von Wedel at the hospital at Oklahoma City, whose services to the plaintiff, the plaintiff alleged to have been unskillfully and negligently performed. That testimony may have

been competent at the time it was introduced. Dr. Von Wedel was at that time a defendant in the case, but when, at the conclusion of the evidence of the plaintiff, the plaintiff dismissed as to Dr. Von Wedel, then that evidence became incompetent, and as to this defendant it was highly prejudicial. It had no bearing on the issues between the plaintiff and the defendant. Without having stricken that evidence from the record and without having directed the jury not to consider the same, the court over the objection of the defendant, in its instruction, reviewed the theory of the plaintiff in the following language:

"* * * That the defendant, Dr. C. Von Wedel, removed the cast from said broken leg and unskillfully and negligently permitted said broken bones to remain out of apposition so that they overlapped, causing plaintiff great and excruciating pain and mental anguish: that at the expiration of 10 days, plaintiff was discharged from said hospital, before his injury had healed, by Dr. C. Von Wedel. * * *"

The court, over the objection of the defendant, gave an instruction as follows:

"You are further instructed that if you find in favor of the plaintiff, you will fix his recovery at such sum as will reasonably compensate him for the injury he has sustained and in fixing his compensation you will only take into consideration his physical pain and suffering and his mental anguish and distress, and if you further find from a preponderance of the evidence that the acts complained of on the part of the Aetna Life Insurance Company were malicious, that is to say, done with some evil intent, or was the result of gross negligence, then you may also take this into consideration, together with all the other facts and circumstances in the case, in fixing the amount of plaintiff's recovery, for the pain and suffering and the mental anguish and distress he has indured, if any, not to exceed the sum of $25,000."

The first portion of the instruction was erroneous in that it restricted the damages to that arising from physical pain and suffering and mental anguish and distress, but inasmuch as the plaintiff has not complained of that error, the defendant may not complain thereof. The error was in favor of the defendant. That portion of the instruction was correct in so far as it provides for "recovery at such sum as will reasonably compensate him for the injury." We will hereinafter discuss that subject. That portion of the instruction dealing with malice and evil intent was erroneous in that there was no evidence of malice or evil intent on the part of the defendant. Since there was no evidence

thereof, it was error for the court to submit malice or evil intent to the jury. McAllister v. Ealy, 98 Okla. 223, 225 Pac. 146.

The distinction between negligence and malice is pointed out in Chicago, R. I. & P. Ry. Co. v. Matukas, 47 Okla. 302, 147 Pac. 1038, and in St. L.-S. F. Ry. Co. v. Boush, 68 Okla. 301, 174 Pac. 1036. In those cases it was held that a recovery may not be had on proof of negligence merely in an action founded on "wanton, malicious, negligent and inhuman conduct."

The plaintiff commenced his action by alleging "wanton, malicious, negligent and inhuman conduct" on the part of the defendant, and in the opening statement he informed the jury of his intent to prove those allegations. In support thereof he introduced evidence tending to show such conduct on the part of Dr. Von Wedel and the ambulance driver, but he introduced no evidence tending to show such conduct on the part of the defendant. It was error for the trial court to give an instruction based in part on negligence and in part on malicious and evil intent, under the facts and circumstances shown by this record, and, since the verdict of the jury was a general verdict and this court is unable to determine that no part of the amount awarded by the jury was the result of the malice or evil intent portion of the instruction, the judgment of the trial court must be, and it is, reversed.

For the reason that the cause must again be tried, this court will determine other issues presented by the record for the guidance of the trial court during the second trial. Our comments on the evidence at the first trial should not be taken as a determination of the effect of that evidence. We will consider the evidence only so far as it is necessary to a determination of the legal principles involved.

The record, in addition to the admitted facts hereinbefore referred to, contains evidence tending to show that the superintendent of Mead Bros., immediately after the injury to the plaintiff, had the plaintiff sent to Seminole and placed in Dr. Martin's hospital, with directions to Dr. Martin to set his leg and give him the best of treatment; that Dr. Martin took an X-ray of the injured member, put him to sleep and set his leg; that after three or four days the pain was easier; that thereafter Mr. Wooten, an authorized representative of the defendant, with power to act, came to the hospital and told the plaintiff that the defendant had a doctor hired by the year at Oklahoma City, that it was costing too much to keep the

plaintiff at Seminole, and that he intended to have him moved to Oklahoma City; that Dr. Martin told Mr. Wooten that he had better let the plaintiff stay where he was, and the plaintiff told him that he did not want to go; that in answer to the plaintiff's statement Mr. Wooten said that it did not make any difference what the plaintiff wanted; that the plaintiff was placed on a cot, put in an ambulance, and taken to the depot at Seminole; that on the road the ambulance stuck in the mud and, in order to get it out, a truck was bumped into it two or three times, causing the defendant to roll back and forth and to strike against the wall and causing his leg to hurt "awful bad"; that Mr. Wooten, an adjuster for the defendant, consulted his boss about the plaintiff and then called Dr. Martin and told him to fix the plaintiff up and send him to Oklahoma City: and that he knew that the streets of Seminole were "in pretty bad shape."

The record shows that Mr. Wooten, when asked if he had taken any precaution of any kind or nature to see that plaintiff had proper care and transportation from the hospital to the railway, answered, "I had nothing to do with that whatsoever." The defendant paid the fees of Dr. Martin and Dr. Von Wedel, the ambulance bill, and the bill for transportation to Oklahoma City. The representatives of the defendant with whom Mr. Wooten discussed the matter were "men at the head of the claim department." The pain and suffering was materially increased by the removal to Oklahoma City.

That the fracture of the limb of the plaintiff arose out of and in the course of his employment by Mead Bros. is admitted. The Workmen's Compensation Act of Oklahoma (Comp. St. 1921, sec. 7285, as amended by Laws 1923, c. 61, sec. 3) makes provision for compensation of an injured workman for an injury that occurs under such circumstances, and, under the decisions of this court, the award of compensation therefor should include "such diseases and infections as may naturally and unavoidably result therefrom." Adams v. Iten Biscuit Co., 63 Okla. 52, 162 Pac. 938. The employer is liable for all legitimate consequences following the accident, including unskillfulness or error of judgment of the physician furnished as required. Brown v. Sinclair Refining Co., 86 Okla. 143, 206 Pac. 1042. To the same effect is Allen v. Elk City Cotton Oil Co., 125 Okla. 142, 256 Pac. 898.

The liability prescribed by the terms of the act is exclusive "except where the employer fails to secure the payment of the compensation for his injured employees. * * * But where the employer has complied with the act on his part, then the jurisdiction of an action to recover damages for the personal injuries suffered by the employee, not resulting in death, is exclusively before the State Industrial Commission." Brown v. Sinclair Refining Co., supra.

Under the act it is incumbent upon the employer to "promptly provide medical and surgical aid" for the injured workman, and, in an action before the Industrial Commission for compensation under that act, the employer is liable "for all legitimate consequences following the accident, including unskillfulness or error of judgment of the physician furnished as required, and the employee is entitled to recover under the schedule of compensation for the extent of his disability based upon the ultimate result of the accident regardless of the fact that the same has been aggravated and increased by the intervening negligence or carelessness of the employer's selected physician." Booth & Flinn, Ltd., v. Cook, 79 Okla. 280, 193 Pac. 36.

Since such a recovery is permitted under the Workmen's Compensation Act, it will be presumed that the Industrial Commission will award compensation in accordance therewith. To permit a recovery for any portion thereof in an action in a district court would permit a double recovery, something that the law does not contemplate.

There is one exception noted in the decisions of this court construing the act, and that is stated in Walker v. Von Wedel, supra. In that case this court held that a petition filed in the district court by an employee against a physician selected by the employer, or his agents, in which it was alleged that the acts of the physician were "maliciously performed in an unskillful manner, which resulted in unnecessary bodily suffering and mental anguish of the plaintiff," stated a cause of action against the physician, notwithstanding the fact that under the Workmen's Compensation Act the award is based in part upon suffering and mental anguish of the injured employee. The theory of that case is that it is the duty of a physician to so care for his patient as not to cause "unnecessary bodily suffering and mental anguish" to his patient and that a violation of that rule amounts to an injury for which damages may be recovered. As was stated in that case, "if this was not permitted, the injured party would suffer a wrong without a remedy." The Industrial Commission makes an award which includes unskillfulness or error of

judgment of the physician furnished as required, but it does not include the result of malicious acts of a physician. There is nothing in this record to bring the cause within the rule stated in Walker v. Von Wedel, supra, and if there had been, it was taken out of the case by the dismissal as to Dr. Von Wedel.

Section 7311, C. O. S. 1921, as amended by section 11, ch. 61, Session Laws of 1923, provides for the enforcement of the obligation of the employer against the insurance carrier. In discussing the rights and liabilities of the employer and insurance carrier, we will hereinafter use the term "employer."

If an employee is injured under circumstances bringing the same within the terms of the Workmen's Compensation Act, the employer is authorized to provide for the injured employee "such medical, surgical, or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus as may be necessary" for the period provided by the act, and he is bound to pay the reasonable charges therefor. If the employer "fails or neglects to provide the same within a reasonable time after knowledge of the injury, the injured employee, during the period of such neglect or failure, may do so at the expense of the employer. * * *" Section 7288, C. O. S. 1921, as amended by section 5, ch. 61, Session Laws of 1923.

We have used the language, "authorized to provide," in connection with the duty of the employer, although the act reads, "the employer shall promptly provide," for the reason that, under the provisions of the act, the only penalty upon the employer for failing to provide for the employee, as therein directed, is that the employee may provide for himself at the expense of the employer.

The furnishing of medical or surgical attendance by the employer is not a mere idle gesture, but is for the benefit of the injured employee as well as the employer. If an employer provides the things required to be provided by him, he has performed his full duty up to that time. The employee must submit to the medical or surgical treatment and hospitalization so furnished, or he must provide the same for himself at his own expense. Farley v. H. T. Milling Co., 113 Okla. 112, 239 Pac. 451; Whitehead Coal Mining Co. v. State Industrial Commission, 89 Okla. 24, 213 Pac. 838; Oklahoma General Power Co. v. State Industrial Commission, 108 Okla. 251, 235 Pac. 1095. Since the selection of the medical or surgical attendant or hospital by the employer

is binding upon the injured employee and the injured employee is required to submit thereto or procure such at his own expense, the employer may not interfere with the medical or surgical attendant or hospital so provided other than to procure others to perform the same service. As long as the injured employee is left under their charge the employer may not control their actions any more than the injured employee may control their actions.

We are not here considering a case where attendants have disagreed as to the proper treatment to be administered. We are here considering a case where an employer directed the removal of an injured employee from the hospital at Seminole to a hospital at Oklahoma City and where the evidence tends to show that the removal was against the advice of the selected physician and surgeon at Seminole without other competent medical or surgical advice.

The claimant testified that Dr. Martin told Mr. Wooten that "He had better let me stay there; my leg was in good shape." There is nothing in the record to show that Mr. Wooten was either a physician or a surgeon or that he procured the advice of either a physician or surgeon with reference to the proposed removal. The record shows that increased pain and suffering resulted from the act of removal and tends to show other elements of damage not cognizable under the terms of the Workmen's Compensation Act.

The defendant says that "there was nothing in the case, except the question of whether the ambulance driver was negligent and that negligence had resulted in any pain or suffering. * * *" We do not agree with that theory. There was in the case the question of whether Mr. Wooten, the agent of the defendant, was justified in directing the removal of the injured employee from one hospital to another.

The defendant in its brief says:

"However, it must be admitted that if it acted in good faith and exercised a reasonable judgment in the performance of its duty, and a person of ordinary care would not have considered it dangerous to have Mr. Watts moved under the circumstances shown by the evidence, there could not be any liability."

Such is the applicable rule up to the time that there is reasonable opportunity to procure medical or surgical advice. It was so stated in Crabb, Adm'x, v. Oklahoma Gas & Electric Co., 120 Okla. 182, 250 Pac. 926, in which this court said:

"The employee was seriously injured and required immediate medical attention. The

defendant in error was authorized to exercise its judgment in selecting the hospital to which it carried the employee for treatment. Defendant in error would not be liable for damages in the selection of a hospital for the treatment of the employee, if it exercised reasonable care in selecting a suitable hospital, equipped to render the necessary medical aid."

That rule, however, has no application where the hospital and a competent physician and surgeon have been selected and the employee has been placed under their care. Under those circumstances the question of good faith and what a person of ordinary care would consider as dangerous are not controlling. A person in good faith might not consider it dangerous to move an injured employee from one hospital to another when a competent physician and surgeon might know that it would be dangerous to make such a removal. Until competent medical or surgical advice is available, an employer is charged only with ordinary care of an injured employee, and, if he acts in good faith and is not negligent, he would not be liable; but when competent medical or surgical advice is available, ordinary care requires that he must act in accordance with that advice. If he acts without that advice, he assumes the responsibility of his action and he is liable for the injurious effects of such a removal. Where there is an emergency requiring a removal without waiting for medical or surgical advice, or where no competent medical or surgical advice is available, the rule stated by the defendant would apply, but it has no application to the facts in this case for the reason that here there was no emergency, and competent medical and surgical advice was available.

Where an insurance carrier directs the removal of an injured employee from one hospital to another without the advice and approval of the physician or surgeon selected under the provisions of the Workmen's Compensation Act or some other competent physician or surgeon who is familiar with the physical condition of the injured employee, he is responsible for any damage to the injured employee arising from his act, unless, under all of the facts and circumstances of the case, he was justified in ordering the removal. In determining whether or not he was justified in ordering such removal, there should be considered, among other facts and circumstances, whether competent medical or surgical advice was available and whether an emergency existed requiring the removal without waiting for such medical or surgical advice. If, under all of the facts and circumstances in the case, the order for removal was wrongful,

the employer is liable for all the damage resulting to the injured employee therefrom which is not compensable under the provisions of the Workmen's Compensation Act.

While it is true, as stated in Brooks v. A. A. Davis & Co., 124 Okla. 140, 254 Pac. 66, that an injured employee can no longer invoke the rules of common law as to compensation for injuries, the injuries therein referred to are injuries arising out of and in the course of the employment, and are not injuries arising out of the violation of the rights of an injured workman while he is suffering from an injury that arose out of and in the course of his employment.

The Workmen's Compensation Act contemplates the selection by the employer of competent physicians, surgeons, and hospitals and that the injured employee will be treated under their direction and not under the direction of the employer. Where the employer attempts to control their action, he violates the rights of the injured employee, and for that injury the Workmen's Compensation Act provides no remedy. For damages arising from such an injury, the employer is liable in an action at law in so far as the damages are not cognizable under the provisions of the Workmen's Compensation Act.

While the employer is not liable in an action at law for the results of the negligence of the physician, surgeon, or hospital selected by him, he is liable in an action at law for the result of his negligence in selecting the physician, surgeon, or hospital, and in the selection thereof he is bound to use reasonable care.

The distinction between wrongful acts of the employer and wrongful acts of the physician, surgeon, and ambulance driver was recognized by the trial court in sustaining the demurrer of Mead Bros. to the evidence.

Those questions are discussed at length in the note in 19 A. L. R. 1185, and the authorities cited thereunder, from which we quote:

"The reason is that A does not undertake to treat B through the agency of the physician, but only to procure for B the services of the physician. The relation of master and servant is not established between A and the physician."

If a railroad exercises reasonable care in selecting a physician or surgeon to treat an injured employee, it is not liable for the acts of such surgeon or physician. The physician or surgeon so employed does not become the agent of the company. Atchison,

T. & S. F. Ry. Co. v. Zeiler (Kan.), 38 Pac. 282. In Pearl v. West End Street R. Co., 176 Mass. 178, 49 L. R. A. 826, it was said:

"But, further, the doctor was not an agent or servant of the defendant in making his examination. He was an independent contractor."

The precedents, without exception, hold that, unless the evidence shows want of care in the selection of the surgeon, the servant injured by malpractice has no recourse against his employer.

In 8 A. L. R. 515, referring to the case of Secord v. St. Paul, M. & M. R. Co., 18 Fed. 221, it was said:

"In Secord v. St. Paul, M. & M. R. Co. (Fed.), supra, the plaintiff sued to recover for damages sustained by reason of personal injuries suffered while he was a passenger on one of the defendant's trains. It appeared that he had been attended by a surgeon furnished by the defendant, and he sought to recover additional damages for the alleged malpractice of the surgeon in treating his injuries. The court held that, since it appears that the defendant had exercised reasonable care to secure the services of a surgeon possessing ordinary skill, no liability could be predicated on the latter's malpractice, and the plaintiff's only recourse for such damage would be an action against the surgeon himself."

The relation is more nearly like that of independent contractor as defined by this court in Producers Lumber Co. v. Butler, 87 Okla. 172, 209 Pac. 738; Midland Oil & Gas Co. v. Creel, 89 Okla. 23, 213 Pac. 852; Moore & Gleason v. Taylor, 97 Okla. 193, 223 Pac. 611; Federal Mining & Smelting Co. v. Thomas, 99 Okla. 24, 225 Pac. 967; Wagoner v. A. A. Davis Const. Co., 112 Okla. 231, 240 Pac. 618; Oklahoma Pipe Line Co. v. Lindsay, 113 Okla. 296, 241 Pac. 1092; Tahona Smokeless Coal Co. v. State Industrial Comm., 128 Okla. 188, 261 Pac. 941; Fox et al. v. Dunning, 124 Okla. 228, 255 Pac. 582; and Southern Const. Co. v. State Industrial Comm., 112 Okla. 248, 240 Pac. 613.

The rule as to independent contractor is stated in 39 Corpus Juris, 1324, as follows:

"* * * The general rule deducible from the decisions and the one now universally recognized is that, where the relation of an independent contract exists, and due diligence has been exercised in selecting a competent contractor, and the thing contracted to be done is not in itself a nuisance, nor will necessarily result in a nuisance if proper precautionary measures are used, and an injury to a third person results, not from the fact that the work is done, but from the wrongful or negligent manner of doing it by a contractor or his servants, the contractee is not liable therefor."

The employer is without authority to control in any manner the physician, surgeon, or hospital. We quote further from the note and authorities in 19 A. L. R. 1184, as follows:

"If the defendants have employed a competent, skillful, and duly qualified medical man, they have done all that it was possible for them to do—they cannot control his opinion in any kind of way; indeed, it would be wrong for them to attempt to do so"

—and:

"To perform these services so as to make them effectual for the saving of life or limb, it was necessary that these surgeons should bring to their work not only their best skill, but the right to exercise it in accordance with their soundest judgment and without interference"

—and:

"There is no more distinct calling than that of the doctor, and none in which the employee is more distinctly free from the control or direction of his employer."

To summarize our statement of the principle involved, if the surgeon in charge of a wounded patient determines that it is necessary to remove him from one hospital to another and directs the removal, and by reason thereof the injured workman suffers an independent injury and damage results therefrom, the employer is not liable therefor in an action at law, but, if an employer directs the removal of an injured employee from one hospital to another, and by reason thereof the injured employee suffers an independent injury and damage results therefrom not cognizable under the provisions of the Workmen's Compensation Act, the employer may or may not be liable therefor in an action at law according to the facts and circumstances in the case. In the first recited instance the injury would be caused by the act of the surgeon over whom the employer has no control and for whose acts he is not responsible, but in the second, the injury would be caused by the act of the employer himself, who must be held to be responsible for the results of his wrongful acts.

The evidence in this case tends to show that the removal of the plaintiff from the hospital in Seminole to the hospital in Oklahoma City was at the direction of the claim agent of the defendant against the advice of the physician employed by the defendant and without other competent medical or surgical advice. When the agent of the defendant gave the direction for the

removal of the plaintiff, he interfered with the rights of the plaintiff to be treated in accordance with the opinion of the physician and surgeon selected by the defendant to treat him, and, if the order for removal was wrongful, the employer is liable for that violation of the rights of the plaintiff, and the plaintiff is entitled to recover against the defendant in an action in the district court all of the damages that he sustained by his injury that are not cognizable by the State Industrial Commission in making its award. He is not entitled to recover any damage that may be included by the State Industrial Commission in its award. Whether or not the order for the removal of the plaintiff from the one hospital to the other was a proper order, under the facts and circumstances in the case, was a question for the jury.

Neither section 7302, C. O. S. 1921, nor the decisions construing the same, are in point here. They deal with injuries arising out of and in the course of employment and have no reference to injuries independent thereof.

The cause is remanded to the district court of Oklahoma county, with directions to grant a new trial in accordance herewith.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur. LESTER, C. J., concurs in conclusion. RILEY, J., dissents.