**BLACKSTOCK et al. v. AIRINGTON et al.**

No. 22359. Opinion Filed Nov. 24, 1931.

Clayton B. Pierce, Fred M. Mock, and J. B. Moore, for petitioners.

Murrah & Bohanon and M. F. Boddie, for respondents.

McNEILL, J. This is an original action brought to review an award of the State Industrial Commission entered on April 24, 1931. It is admitted by petitioners that respondent, on April 10, 1929, sustained an accidental personal injury arising out of and in the course of his employment with Harry L. Blackstock, who was engaged in a business subject to and covered by the provisions of the Workmen's Compensation Law. Respondent was employed as an oil driller's helper and had been working for petitioner for a period of about 40 days, receiving wages at the rate of $7 per day. Respondent caught his left foot between the swivel and swivel bail, crushing his foot and the bones of his left leg. The description by the attending physician filed with the Industrial Commission on April 18, 1929, is as follows:

"Laceration of skin anterior surface of left foot six inches long. Skin and soft tissues of entire foot from ankle down torn loose from boney structure except on anterior and post-anterior of foot. Incomplete fracture of oscalcis. Treatment: Wound cleansed, hemorrhage stopped, drainage established, laceration closed and dressed."

The record shows that respondent has been paid compensation at the rate of $18 per week for a period of 24 weeks, commencing April 22, 1929, and including February

6, 1931, amounting to a total sum of $1,-692. In addition thereto, petitioners have expended or paid $1,057.50 for medical treatment and $1,369.75 for hospitalization, and for medical treatment an additional sum of $510.15, making a total sum of $4,629.40. The record shows that respondent has received the best of medical attention. On April 10, 1930, on motion of respondent to determine the extent of disability, a hearing was had before the Commission, and on the 24th of April, 1931, the Commission entered its award correcting its award of the 20th of April, 1931, to read as follows:

" 'The Commission is of the opinion: That under section 7290, paragraph 1, C. O. S. 1921, as amended by the Session Laws of 1923, the loss of both feet constitutes permanent total disability, for which compensation is provided, under the law, for a period of 500 weeks, that under section 7290, subsection 4, for percentage loss of use is provided for by that portion of the number of weeks as provided in the schedule for the loss of a member, which the partial loss of use thereof bears to the total loss of use of such member. That 78 per cent. loss of use of the left foot and 15 per cent. of the right foot would be equivalent to 46½ per cent. loss of both feet, and that claimant is entitled, under the law, to compensation at the rate of $18 per week for a period of 232 weeks and 3 days in the total sum of $4,185, as a result of aforementioned accidental injury of April 16, 1929.

"It is therefore ordered: That correction of order entered on the 20th day of April, 1931, on page 2, be made, and the order with that exception remain in full force and effect."

Petitioners urge in their brief two propositions as follows:

"1. The award of the Commission is excessive and unreasonable under the peculiar circumstances surrounding this case.

"2. The finding of fact by the Commission of a 15 per cent. permanent disability to the right leg is based upon surmise, conjecture, and speculation, and therefore cannot form the basis of an award."

The respondent sustained a crushing injury to his left foot involving the bony structure of the heel and damaging the Achilles tendon. It appears that the attending physician recommended at the time the amputation of the foot, but that respondent requested the physician to make an effort to save it. Petitioners urge that had they chosen to do so they could have stood upon the recommendation of Dr. Pemberton, the attending physician, with reference to the amputation of this foot and acknowledged a total loss of a foot, and thus have limited the liability imposed upon them by the Workmen's Compensation Law to 150 weeks' compensation, or the sum of $2,700, plus the medical expense involved in the amputation of the foot. We do not approve such a contention. There was nothing unreasonable in the request of respondent in asking that the attending physician try to save his foot. Petitioners state that they respected the wishes of respondent in helping him to save his foot and that, instead of receiving credit for doing a service to one of their employees, they have been penalized by an excessive award for compensation, exceeding by more than $1,000 the total compensation they could have been made to pay had they not sought to save respondent's foot, in addition to the $4,600 rendered to respondent.

The record discloses that petitioners cooperated fully with respondent to save his foot. The foot has been saved on the basis of a 78 per cent. permanent total disability of the same. The award of 46½ per cent. of permanent total disability was based upon a finding of fact of the Commission that respondent had a 78 per cent. loss of his left foot and 15 per cent. total permanent loss to his right leg. The latter disability resulted from an involvement of the muscles of the leg, because of the skin which was taken from the leg to graft upon the injured heel in an effort to build it back to normal.

There is no provision under our Workmen's Compensation Law granting to an employer or insurance carrier the power to order or direct an attending physician to remove an employee's injured foot by amputation for the purpose of saving to themselves a medical expense that might necessarily and reasonably be incurred in the treatment thereof. We are of the opinion that the general rule of responsibility often announced by this court in reference to a physician, to wit: "His contract as implied by law is that he possesses that reasonable degree of learning, skill, and experience which is ordinarily possessed by others of his profession; that he will use reasonable and ordinary care and diligence in the treatment of the case which he undertakes, and that he will use his best judgment in all cases of doubt as to the proper course of treatment" (Champion v. Kieth, 17 Okla. 204, 87 P. 845) should apply, and that the employer has no right or authority to interfere in any way with the judgment of the physician as to the proper course of treatment. The employer or insurance carrier cannot dictate to the attending physician the course of procedure that he is to take in the treatment of an employee who

has sustained an accidental injury arising out of and in the course of his employment but must promptly provide for an injured employee such medical treatment and care as may be necessary during 60 days after the injury or for such time in excess thereof as in the judgment of the commission may be required.

This court, in the case of Aetna Life Insurance Co. v. Watts, 148 Okla. 28, 296 P. 977, states:

"* * * The employer may not interfere with the medical or surgical attendant or hospital so provided other than to procure others to perform the same service. As long as the injured employee is left under their charge, the employer may not control their actions any more than the injured employee may control their actions."

In the case at bar, the attending physician elected not to amputate the foot, but to rehabilitate the same, and as a result thereof created a condition which has permitted respondent to receive a partial use of this member of his body.

The expert testimony shows that there is a permanent disability to the left foot and as a result of the removal of a part of the right leg for grafting purposes a dense scar of about five inches by five inches resulted and the scar adhered to the muscles in the calf of the right leg. The muscle fibers have become stiffened and their functions impaired, resulting in approximately 15 per cent. loss of use of that leg, which disability is of a permanent nature.

In reference to the method of determining the amount of compensation, this court in the case of Barnsdall Refining Co. v. Ramsdall, 149 Okla. 99, 299 P. 499, states:

"* * * Where there is a 10 per cent. permanent partial loss of the use of both legs, the compensation should be computed on the basis of 500 weeks and an award of 50 weeks for a ten per cent. permanent partial loss of the use of two legs is in conformity therewith and must be approved."

Counsel for petitioners urge that the finding of the Commission of a 15 per cent. permanent disability of right leg is based upon surmise, conjecture, and speculation. However, all the doctors called upon to testify in this case, except Dr. Von Wedel. testified the respondent had a disability to the right leg as a result of the operation on the right leg, and there is ample evidence to support the finding of the Commission that there was a 15 per cent. permanent disability to the right leg, which disability of the right leg resulted by reason of scientific medical treatment found to be necessary in the rehablitating of respondent's left foot.

The award is affirmed.

LESTER, C. J., and RILEY, HEFNER, CULLISON, ANDREWS, and KORNEGAY, JJ., concur. CLARK, V. C. J., and SWINDALL, J., absent.

Note.—See under (2) annotation in 7 A. L. R. 545; 28 R. C. L. 822; R. C. L. Perm. Supp. p. 6246.