Larry MATTINGLY, Petitioner,

v.

STATE INDUSTRIAL COURT, Sturdevant Sheet Metal & Roofing Company, and Commercial Standard Insurance Company, Respondents.

No. 39970.

Supreme Court of Oklahoma.

May 28, 1963.

Frank R. Hickman, Tulsa, for petitioner.

Covington & Gibbon and Dewey Stark, Tulsa, Charles R. Nesbitt, Atty. Gen., for respondents.

WELCH, Justice.

The order under review disallows claimant's expenses incident to his self-procured medical attendance. It rests on the trial tribunal's determination that " * * * the medical treatment in question was unauthorized * * * "

The facts material to the controversy are undisputed. While engaged by the employer in construction work at Enid, Oklahoma, claimant, a young man then 21 years of age, sustained two closely succeeding injuries to his back. The first accident occurred on June 16, 1959, when he was spreading gravel "in a bent-over position * * * (and) jerked the shovel back;" the second took place two days later when he "pulled up on the wheelbarrow full of gravel." Although in pain, he continued to work until the end of the week. The following Monday he reported the injuries to the job superintendent. The latter referred him to Dr. N, a physician at Enid, under whose outpatient care he remained for approximately five days, receiving heat therapy. On his last visit claimant informed the physician he wished to leave Enid and rejoin his family at Tulsa where he would seek further medical care. It is not quite clear from the record whether claimant actually named the physician he intended to consult in Tulsa, but it does stand established that Dr. N approved of claimant's plan to return home and released him without instructions to report to any particular practitioner. On his return to Tulsa claimant communicated with the adjustor for employer's insurance carrier, advising the latter that he needed additional treatment and was going to see his family doctor. The adjustor voiced his approval and claimant proceeded to procure the services of his family physician, Dr. B, who undertook to treat him on an outpatient basis with the assistance of Dr. K. On July 8, 1959, claimant notified

employer by letter that he was "now in great pain and taking medical treatment" from Dr. B. He added that both he and his doctors would "cooperate" with the employer "to the fullest extent." According to the acknowledgment on the return receipt, this letter reached the employer the following day (July 9).

Claimant continued as an outpatient until July 13, when his pain became "unmanageable." He was then admitted to the hospital where two days later Drs. B and K placed him in the care of Dr. F, a specialist in orthopedics. The latter physician immediately carried out a myelogram which revealed "filling defects of the nerve root sheaths on the left at the level of the fourth and fifth lumbar vertebrae." Remaining under conservative management, claimant underwent manipulation under anesthetics, further heat therapy, sedation, traction, and ultrasound and medcolator applications.

On July 24, 1959, while he remained bedfast in the hospital, the adjustor for employer's carrier served notice on claimant's counsel, the hospital and Drs. B, K and F, "tendering" treatment "if necessary" by Dr. N of Enid and Dr. R of Tulsa as the only "authorized" physicians. At the time of this notice it became apparent that claimant was not responding to conservative therapy and would require laminectomy and spinal fusion for the relief of his back pathology. Dr. F apprised a representative of employer's carrier of the nature of claimant's condition. As a result of these communications Dr. R, the carrier's "authorized" physician, examined claimant at the hospital on July 30th. In a letter of August 3, directed to carrier's counsel, Dr. R unequivocally confirmed the diagnosis previously made by Dr. F. In addition, Dr. R also indicated the presence of a "strong psychosomatic component" which "would detract from what would otherwise be considered as a likely good anticipated result from (conservative) treatment." While nowhere negating the necessity for surgery, Dr. R concluded "It would be well

to continue conservative management in this case from 3 to 5 weeks more, should symptoms persist for that long a period."

After consultation with Dr. R, Dr. F continued the same regime for nearly three weeks. He then advised counsel for the carrier that in his opinion claimant required immediate surgery. In his conversation with counsel for the carrier Dr. F stated that he would like to be authorized to perform the surgery or have the operation furnished "by some other orthopedic surgeon." Both requests were denied.

According to the record claimant himself sought on several occasions to reach the adjustor by telephone, but was told that the latter was out of town working on "flood damage" claims.

On August 17, Dr. F decided that "sufficient time had elapsed (and) that further delay would not only increase the patient's disability but predispose him to possible narcotic addiction." The following day Dr. F performed the operation.

The claim for compensation was settled by order on joint petition entered on April 20, 1960. Under its terms claimant received the sum of $3,600.00. This amount was based solely on Dr. F's report estimating claimant's residual disability at 20 to 25 per centum. At the time of the hearing on joint petition employer reserved the issue of its liability for medical expenses and the parties agreed to submit same at a later date.

In this proceeding under review claimant sought the allowance of medical and hospital charges incident to his self-procured treatment by Drs. B, K, and F. Upon refusal of the trial tribunal to adjudge employer liable for these expenses, claimant seeks review.

■ Under the provisions of 85 O.S. 1961 § 14, if the employer fails or neglects to promptly provide medical, surgical or hospital services to an injured employee, with knowledge that the same are needed, the injured workman may, during the period of such neglect or failure, procure

the necessary services at the expense of the employer. Douglas Aircraft Company v. Titsworth, Okl., 356 P.2d 365, 366.

■ The statutory duty of the employer to provide medical treatment for an injured workman is mandatory in form. Its purpose is to secure a seasonable and effective cure to the end that the employee may be promptly restored to full productive labor, or if that be impossible, to the highest attainable degree of capacity. McMurtry Bros. v. Angelo, 139 Okl. 236, 281 P. 964. When the employer fails, neglects or refuses to discharge his mandatory duty, an injured workman is by force of statute authorized to procure medical services necessary to effect a seasonable cure or effectively correct the condition produced by the accidental injury. The statute does not require that, on employer's failure to meet the obligation imposed upon him by law, the workman must obtain a prior approval of the trial tribunal before he may secure necessary treatment by physicians of his own selection and have the employer bear the expense thereof. If the self-procured services were rendered during the period of employer's refusal or neglect, or while the employer was not furnishing adequate and satisfactory medical care, and such services were reasonably necessary to effect a speedy cure, the employer is liable for the expenses incident thereto in an amount determined by the trial tribunal to be reasonable and in keeping with such charges as prevail in the same community for similar treatment for like injuries. 85 O.S.1961 § 14; Douglas Aircraft Company v. Titsworth, supra; see also, Searcy v. Cherokee Motel, Okl., 363 P.2d 846, 848.

In the proceeding under review there was no dispute between the parties concerning the amount of the charges made for claimant's self-procured attendance. Nor did the employer deny that the entire course of treatment, together with the surgery, was in fact necessary to seasonably and effectively relieve claimant from the condition produced by his accidental injury.

The sole issue formed below was whether claimant was "authorized" to procure the services at employer's expense.

The determination of the single issue before us depends largely, if not entirely, upon the legal effect of employer's tender of medical care. Claimant asserts that the tender as made was but an "idle gesture" and the undisputed evidence discloses that the employer was in fact "derelict" in its statutory duty to provide him with treatment. Employer counters that when it tenders treatment by authorized physicians and claimant then submits himself to the care of doctors of his own selection the employer "has fulfilled its obligation and is not required to do anything further to avoid the responsibility for payment of medical bills" incurred for self-produced treatment.

■ The duty of furnishing an injured workman with medical and surgical attendance is mandatory. It may not be satisfied by "a mere idle gesture" nor by perfunctory compliance. Aetna Life Ins. Co. v. Watts, 148 Okl. 28, 296 P. 977, 982.

■ When claimant returned to Tulsa he received no instruction concerning further treatment. Neither was he directed to any particular physician. For a period of nearly four weeks he remained under the care of Drs. B, K and F with full knowledge and acquiescence of the employer. At the time tender of treatment by specified physicians was made, claimant lay bedfast in the hospital. Although employer knew his whereabouts, no arrangments were made for his transfer to some "authorized" hospital, and there was no active effort to assist, instruct or even contact him. The tender of medical care was itself conditional by the qualifying phrase "if necessary." After Dr. R, the authorized physician, examined claimant in the hospital six days following the date of notice tendering treatment and found him disabled, bedfast and in need of immediate care, no one undertook to make arrangements for the purpose of making "authorized" treatment available. Em-

ployer knew at that point of time that claimant was totally incapacitated and unable to leave the hospital. Moreover, the evidence is clear and undisputed that Dr. F's request to operate, or to furnish a competent orthopedic surgeon, met with unequivocal refusal by counsel for employer's insurance carrier.

In Draney v. Industrial Accident Commission of California, 95 Cal.App.2d 64, 212 P.2d 49, 50, the California court, construing a statute similar in language to ours, stated:

> " 'The requirement of this statute *implies something more than passive willingness on the part of an employer to respond* to a demand or request for medical aid. It implies some degree of active effort to bring to the injured employe the required humanitarian relief. A person injured by an accident is presumed to be under more or less physical disability, and not in a normal condition so as to be able to look out for himself and his needs. This being true, it becomes the duty of the employer having knowledge that one of his employes has been injured by an accident arising out of and in the course of his employment to *be more than passive in his efforts to furnish the medical aid prescribed and required by the statute.* * * *

> " 'The employer must, upon the happening of an accident, at once instruct the employe regarding the medical and surgical treatment to be furnished. He must specifically instruct what to do and to whom to report. If the employe is not so instructed, and secures treatment on his own behalf, the employer is liable for the reasonable value of such treatment, even though he was ready and desirous of furnishing medical aid according to his own plans.' " (emphasis ours)

See also, Scruggs Bros. & Bill Garage v. State Industrial Commission, 94 Okl. 187, 221 P. 470.

There was error in the determination of the trial tribunal that claimant was unauthorized by statute to incur the charges sought to be allowed. We hold from the undisputed evidence that the employer was afforded opportunity to furnish treatment, but failed to discharge its mandatory duty and that claimant was therefore authorized by law to procure treatment from physicians of his own selection at the expense of the employer.

The order is accordingly vacated with directions to adjudge the employer liable for charges incident to claimant's self-procured treatment.

BLACKBIRD, C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON, IRWIN and BERRY, JJ., concur.