[Civ. No. 7727.   Third Dist.   Dec. 12, 1949.]

THERON W. DRANEY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, W. L. ENGLISH et al., Respondents.

John C. Bartlett for Petitioner.

T. Groezinger and Alfred C. Skaife for Respondents.

ADAMS, P. J.—This is a petition for review of a portion of a decision by respondent Industrial Accident Commission in which petitioner was found to have suffered an industrial injury, and awarded compensation, but was denied any allowance for self-incurred medical expenses.   He here contends that such expenses should have been allowed.

At the time of the injury Draney was employed by W. L. English, as a general laborer, and was, on the 30th day of August, 1948, engaged in loading rocks into a truck. About 11 a.m. he suffered pain in his back, but continued working that day; and he continued in English's employ, doing lighter work, until September 10th, though his pain grew steadily worse. On September 5th, he went to the Tahoe Medical Center to which his employer's employees had been instructed to report

in case of injury, and Dr. Weyand, English's insurance carrier's physician taped his back, advised him to use bed boards, and to limit his activity. On September 6th Dr. Weyand made a report of Draney's injury to the Industrial Indemnity Company, in which he stated: "This clinic is closing and patient has been instructed to report to another M.D. in one week." He also reported that further treatment was needed for a period unknown. This report was received by the insurance carrier in Sacramento on September 8th. It then mailed to Draney a form of report to be made out by him, and it also wrote requesting him to contact it in Sacramento. Draney was not instructed by Dr. Weyand nor by the insurance carrier nor by English to report to another specified doctor; and as his pain increased he went to Dr. Walter L. White in Reno on September 28th, who treated him by manipulation, deep heat and analgesics. Draney visited Dr. White again on October 2d, but as the treatments gave only temporary relief he went to Dr. Lynn B. Gerow, M.D., on October 4th. Dr. Gerow told him he probably slipped an intervertebral disc, and that an operation might be necessary. Hoping to avoid such operation Draney then went to San Francisco and had two chiropractic treatments by a Dr. Hunt, which gave no relief. Dr. Hunt referred him to Dr. Mack, a specialist in Reno, and on October 13th he returned to Dr. Gerow who with Dr. Mack made a study of his back and advised an operation immediately. Such operation was performed the following morning and revealed severe herniation of the lumbosacral disc which was removed. The patient was hospitalized for 14 days and incurred an expense of about $600. He then took a job as caretaker of a hotel, involving very light work.

The testimony shows that between August 30th and September 10th Draney told English about his injury, and that he had been to see Dr. Weyand; also that he told him about necessary surgery 10 days or two weeks before the operation; but he did not communicate further with him until after the surgery. He did not make any particular demand upon English for medical treatment; it is admitted, however, that none was ever offered him, except that there was the general understanding that injured employees were to report to the Tahoe Medical Center. When that closed it is obvious that Draney was left without instruction as to where to go for medical care and treatment.

The question before us seems to be whether, under such circumstances, the injured employee was obligated to seek such instruction from his employer, or whether the burden was upon the employer to furnish medical assistance.

Section 4600 of the Labor Code provides: "Medical, surgical, and hospital treatment, including nursing, medicines and surgical supplies, crutches, and apparatus, including artificial members, which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment."

In *Myers* v. *Industrial Acc. Com.*, 191 Cal. 673, 679-680 [218 P. 11], the court said: "It is plain from a reading of the compensation act that it is the first duty of an employer to furnish medical aid and hospital service to an injured employee, and not merely to reimburse the latter after the service has been procured elsewhere. . . . Consent of an employer either affirmatively given or inferred from his inaction, to the employee to procure his own treatment, renders the employer liable for the reasonable expenses thus incurred." *Bucyrus Co.* v. *Reisinger*, 77 Ind.App. 361 [133 N.E. 516], was cited in that case. Its facts are comparable to those in the instant case. There the employer complained of the failure of the injured party to return to its doctor for further treatment, and insisted that there was no evidence that it knew, or had any notice of the serious injury to the employee that manifested itself about 50 days after the injury; that its notice and knowledge of the original injury was not sufficient. The court quoted from the applicable portion of the state statute, which is similar to ours, and said, page 517 [133 N.E.]:

"The requirement of this statute implies something more than passive willingness on the part of an employer to respond to a demand or request for medical aid. It implies some degree of active effort to bring to the injured employee the required humanitarian relief. A person injured by an accident is presumed to be under more or less physical disability, and not in a normal condition so as to be able to look out for himself and his needs. This being true, it becomes the duty of an employer having knowledge that one of his employees has been injured by an accident arising out of and in the course of his employment to be more than passive in his efforts to furnish the medical aid prescribed and required by the statute The statute requiring the employer to furnish medical services

is mandatory in form. Having had knowledge of the accident and injury, and knowing that appellee needed further treatment, and having failed to make any effort to see that he got the necessary medical care, appellant is in no position to complain of the fact that it was not notified when appellee's condition became serious as the result of the accident and injury of which it had actual knowledge. The employer here had notice of the injury. The doctor to whom it sent appellee for treatment knew and testified that further treatment was necessary. It therefore had an opportunity to take the proper steps to furnish medical aid to the injured employee, and with such knowledge as is disclosed by the evidence in this case, having failed to follow up appellee's injury, it is in no position to complain of the failure to give it notice that the injury was growing worse. Appellant knew that appellee's injury did not respond to first aid treatment. It sent him to a physician for treatment, and knew that he needed further treatment. It knew he quit work, and having failed to do more than show a passive willingness to comply with the mandatory requirement of the statute to furnish medical aid, appellant cannot now be heard to complain that it had no notice of the serious effect of the injury which nearly resulted in his death, and which made him a cripple for life. If appellant was prejudiced because of its failure to have notice of appellee's serious illness which the Board found resulted from the accident and injury to appellee, the fault can be traced to its failure to follow up and treat an injury that it knew needed further treatment.''

In 1 Campbell on Workmen's Compensation, section 739, page 656, the text reads:

''When the employer has had notice of the fact of an industrial injury and notice of the need for treatment, with attendant opportunity to furnish such medical treatment, but fails to tender such treatment promptly, . . . the employee is entitled to obtain the same from physicians of his own selection at the employer's expense.''

In 1 Honnold on Workmen's Compensation, section 195, page 699, the author cites as authority *Denedy* v. *Panama-Pacific International Exposition Co.*, 1 Cal. I.A.C. Dec. 109, and says:

''The employer must, upon the happening of an accident, at once instruct the employe regarding the medical and surgical treatment to be furnished. He must specifically instruct what to do and to whom to report. If the employee is not so

instructed, and secures treatment on his own behalf, the employer is liable for the reasonable value of such treatment, even though he was ready and desirous of furnishing medical aid according to his own plans.''

The decision of the commission in the Denedy case cited by Honnold makes it impossible to conceive how it could deny the self-incurred medical expenses to Draney. In that decision the commission said:

''In this case the physician of the defendant who gave the applicant first aid allowed him to go away without giving him any instructions to return or telling him that provision would be made for his treatment, and it was not until three days afterwards that the applicant was informed of his duties in the premises. By that time he had incurred certain reasonable expenses for treatment and had secured the services of Dr. John Lagan to treat him and treatments had been given him. It was not incumbent upon applicant to change his physician after thus having made proper arrangements for treatment. Therefore, in this case, an allowance is made for the medical and surgical treatment. . . . ''

In the instant case English, the employer, had notice of Draney's injury; also, his insurance carrier was notified by Dr. Weyand of the injury, and that Draney was in need of further treatment and had been told to report to another doctor. Neither the employer nor the insurance carrier denied knowledge, nor did either advise Draney as to what physician he should see, or where he should go for the further treatment needed.

There is no testimony in the record by or on behalf of the respondents, and no testimony that they lacked knowledge of Draney's need for further medical aid, nor is it contended that the operation which was performed for him was not necessary, or that it was not beneficial, or that the expenses incurred were not reasonable. We think that the record shows that the respondents neglected and failed to furnish Draney with the necessary treatment, and that they should be held liable for the reasonable expense incurred by him in securing it.

The award insofar as it denied Draney recovery for his self-incurred medical expenses, is annulled, and it is ordered that the award of the commission be modified in accordance with the views herein expressed.

Peek, J., and Thompson, J., concurred.