[Civ. No. 17379.   Second Dist., Div. Three.   Mar. 27, 1950.]

PACIFIC ELECTRIC RAILWAY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and GRETTA PATTERSON, Respondents.

C. W. Cornell, O. O. Collins, John R. Allport and John H. Gordon for Petitioner.

T. Groezinger and Alfred C. Skaife for Respondents.

WOOD, J.—Review of proceedings of the Industrial Accident Commission. Petitioner, who is the employer, seeks to annul a supplemental award for self-incurred medical expenses. Petitioner argues, among other things, that it was not given notice and a fair opportunity to furnish the medical treatment.

On November 13, 1944, the applicant Gretta Patterson, who was then employed by petitioner as a cashier, sustained a back injury while carrying a box of coins down a stairway. Thereafter she was away from her work about three months and during that time she received medical treatment and disability payments from the employer. She then resumed her employment and worked intermittently until April 1, 1946, when she quit because she had continuous backaches. Thereafter the employer made no disability payments to applicant and furnished no medical treatment. It did, however, offer diathermy if at any time applicant thought it would help her. Applicant then procured medical treatment, but her condition became progressively more painful. On October 24, 1947, she filed her claim with the commission. Medical reports were then

filed by the applicant and the employer. A hearing was had on December 5, 1947. Thereafter one of the commission's physicians examined applicant and recommended that she be "referred" to an independent medical examiner in the field of orthopedic surgery. The commission thereupon appointed Dr. Homer C. Pheasant to make an independent medical examination of applicant. After the examination, Dr. Pheasant made a written report to the commission in which he stated his diagnosis as follows: "(1) lumbosacral instability, moderate. (2) possible ruptured lumbosacral intravertebral disc, right." He also stated therein that "It is felt that we are warranted in recommending at this time an interlaminar exploration of the lumbosacral disc and perhaps the disc between L4-L5 on the right to probably be followed by a spinal fusion." That report was filed on April 9, 1948, and on the same day a copy of the report was served on the employer. On May 25, 1948, the commission filed its findings and award. It found that applicant's injury arose out of and occurred in the course of her employment; and that it had caused temporary total disability. It made an award in favor of applicant requiring that disability payments, specified therein, be made during the continuance of the disability. It was also provided in said award that the applicant receive the medical care "indicated" in the report of Dr. Pheasant. The employer then requested a rehearing, which was granted. On September 1, 1948, the commission filed its decision on rehearing and made an award therein which was substantially the same as the first award, except that the provision relating to medical care indicated in the report of Dr. Pheasant was omitted and it was stated therein that applicant was "in need of and entitled to, at the expense of the defendants herein, further medical treatment." The employer thereafter made disability payments as required by said award, but did not furnish medical treatment for applicant. On November 30, 1948, the employer filed a "request" for termination of liability, which was denied on December 9, 1948.

On January 19, 1949, applicant filed a "Petition for Surgery" in which she requested that the commission order surgery to be performed at the expense of the employer. In the petition she stated: "NOTICE IS HEREBY GIVEN to the . . . Pacific Electric Railway Company, that . . . applicant . . . is still suffering from said occupational injury. . . . That said applicant is in need of surgery, as shown by the letter of Dr.

Homer Pheasant, an independent examiner, already on file herein, and by the attached letter of Dr. Marvin H. A. Peterson. That said defendant [employer] refuses to have surgery performed.'' Dr. Peterson, referred to therein, was her personal physician, and his letter stated that recent blood counts of applicant revealed anemia; that he was attempting ''to get her in good enough physical condition to undergo the necessary surgery which she must have to correct her back condition''; that continued delay and resultant anxiety had done her great harm so that she was near a nervous collapse; and that he believed further delay would ''seriously endanger the results which may be obtained by surgery.'' He stated further therein that applicant had great confidence in Dr. C. Hunter Shelden, ''an eminent surgeon,'' and he recommended that applicant be placed in Dr. Shelden's care. On January 29, 1949, the employer filed a petition for a permanent disability rating. On March 3, 1949, a hearing was had on the petition for surgery and the petition for permanent disability rating. At that hearing the applicant testified that her condition had become worse since the first hearing on December 5, 1947, and she had been confined to her bed nine-tenths of the time since then; that she had continuous pain in her back, legs and arms, and had severe headaches almost every day; that she had been unable to do her housework or to bathe herself; and that her physician had been giving her empirin and codeine tablets, shots and sleeping pills. On said March 3, 1949, the referee dictated his report on said hearing. In that report he stated that in his opinion the commission should order surgery in accordance with the findings and award made on May 25, 1948 (which were vacated when a rehearing was granted). The findings and award referred to were to the effect that applicant should receive medical care indicated in the report of Dr. Pheasant, namely, that surgery should be performed. The referee recommended in his report that an order issue ordering said surgery and for reimbursement for self-procured medical treatment to date. (The commission did not file its decision until March 29, 1949.) About March 23, 1949, Dr. Peterson, applicant's physician, advised her to go to a hospital, and he referred her case to Dr. Shelden, who also told her to go to a hospital. She went to a hospital on March 26th. The operation was performed by Dr. Shelden on March 30th. On March 29, 1949, the commission made a further award in which it granted applicant's request for surgery. The commission found that applicant's condition

had not become permanent, and it ordered that compensation payments for temporary total disability be continued. A copy of that award was received by the employer on March 30, 1949. Also on March 30, 1949, the employer was notified by applicant's attorney that the operation had been performed on that day.

On June 4, 1949, the employer filed a letter with the commission in which it stated that an operation had been performed upon the applicant by a physician selected by her and without any notice to petitioner, and that petitioner was informed of the operation after it had been performed. The employer set forth in said letter a list of expenses, alleged by applicant to have been incurred in connection with the operation, and it requested that the matter be set for hearing "to determine the extent of defendant's [employer's] liability, if any, for said medical expenses." The request was granted and a hearing was had on June 22, 1949. The applicant testified that prior to the operation, at the times when she was "in extreme pain," her physician gave her a "shot" to relieve the pain; that three times during the week prior to the operation her physician called on her and gave her a "demerol shot," to put her "out of pain," but that after the third shot she was paralyzed on the right side; that her physician then refused to take further responsibility and "ordered" her to the hospital; that he "called" Dr. Shelden, who then "called" applicant and told her to come to the hospital "right away"; that she went to the hospital on March 26, 1949, and that her attorney was notified before she went. She testified further that her condition had improved since she left the hospital. Dr. Shelden made a report regarding the operation, dated May 5, 1949, which was admitted in evidence, and in which it was stated: "The fifth lumbar nerve root was very large, reddened and edematous and was firmly fixed to the posterior longitudinal ligament. No actual protrusion of intravertebral disc was visible or palpable, but the size and character of the nerve signified the presence of a local irritative process. The nerve was surrounded by large tortuous, extradural vessels which were dissected from the nerve root and coagulated. A neurolosys was done of the nerve root." It was stated further therein that applicant "appeared to have received substantial improvement from the surgical procedure." At the hearing, statements for various medical expenses incurred by applicant in connection with the operation were admitted in evidence. Testimony was given regarding the reason and

necessity for such expenses, and the nature and extent of the services rendered.

On July 12, 1949, the commission filed its supplemental award in which it found the amounts expended by applicant for such medical treatment, surgery, hospitalization, and nursing, in the total sum of $1,264.05, to be reasonable and made an award in favor of applicant for that amount. On August 1, 1949, a petition for rehearing of the supplemental award was filed by petitioner. On August 26, 1949, the commission filed its order denying defendant's petition for rehearing. Thereafter the petition for a writ of review was filed with this court.

■ Petitioner contends in effect that it was not given notice and a fair opportunity to furnish the medical treatment. This contention is not sustainable. Section 5400 of the Labor Code provides that service of notice of injury is a prerequisite to maintaining a claim for compensation. Section 5402 of the Labor Code provides: "Knowledge of such injury, obtained from any source, on the part of an employer, . . . or knowledge of the assertion of a claim of injury sufficient to afford opportunity to the employer to make an investigation into the facts, is equivalent to service under section 5400." The petitioner herein had knowledge of the injury the day after it occurred, which was approximately four and a half years prior to the date of surgery. As above shown, petitioner also had knowledge as early as April 9, 1948, almost a year prior to the surgery, that such surgery had been recommended by an independent medical examiner. Also, a copy of applicant's petition for surgery to be performed at the expense of the employer, was served on the employer on January 19, 1949. The employer had notice that surgery was contemplated.

Section 4600 of the Labor Code provides: "Medical, surgical, and hospital treatment . . . which is reasonably required to cure or relieve from the effects of the injury shall be provided by the employer. In the case of his neglect or refusal seasonably to do so, the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment." Petitioner did not offer, at any time prior to the operation or at all, to furnish surgical treatment or indicate any intention of doing so. After the employee filed her application for compensation the petitioner did not offer her any medical treatment, and it appears that her condition became worse. Applicant testified that she requested medical

treatment on April 25, 1945 (before filing her application), and that the chief surgeon of petitioner's medical department told her she did not need any more treatments. " 'When the employer has had notice of the fact of an industrial injury and notice of the need for treatment, with attendant opportunity to furnish such medical treatment, but fails to tender such treatment promptly, . . . the employee is entitled to obtain the same from physicians of his own selection at the employer's expense.' " (*Draney* v. *Industrial Acc. Com.*, 95 Cal.App.2d 64, 67 [212 P.2d 49].) In the case just cited the employee had received a back injury in the course of his employment, and he went to a clinic where his employer had instructed the employees to report in case of injury. The clinic was about to terminate business but gave the employee one treatment. Thereafter the employee received a form of report from the employer's insurance carrier and also a request to "contact" it. He received no further instructions from the insurance carrier or from the employer, who knew of the injury, and except for the treatment at the clinic he made no demand upon the employer for medical treatment. About one and a half months later, upon the advice of his own physicians that he have an operation immediately, the employee had an operation performed on his back. In making its award the commission denied recovery for such self-incurred medical expenses. The court, in annulling that portion of the award, held that "the burden" was upon the employer to furnish medical assistance. It stated therein, at page 66: " 'The employer must, upon the happening of an accident, at once instruct the employe regarding the medical and surgical treatment to be furnished. He must specifically instruct what to do and to whom to report. If the employee is not so instructed, and secures treatment on his own behalf, the employer is liable for the reasonable value of such treatment, even though he was ready and desirous of furnishing medical aid according to his own plans.' "

Petitioner argues, in effect, that surgery was not necessary and therefore that the expenses which applicant incurred in connection therewith were not necessary. In making its award on March 29, 1949, the commission found that the applicant was in need of and entitled to surgery at the expense of the employer. That finding was supported by the evidence. Over the long period between the injury and the surgery applicant repeatedly sought medical advice in an effort to ascertain

the nature of her injury and to be relieved from the effects of the injury. She was examined by many physicians and submitted to various treatments. Nevertheless her condition became steadily worse. There was evidence at the hearing on March 3, 1949, that she was unable to do her housework. She was in bed most of the time (after December 5, 1947) and was taking an increased amount of drugs to relieve her pain. Dr. Shelden reported that applicant's condition has improved since the operation. She testified at the hearing on June 22, 1949, that she had been "up and around" about two weeks, although she had to take certain rest periods; and that she was doing some of the cooking and helping with the dishes. It appears therefore that the surgery was necessary and beneficial.

Petitioner also contends that no emergency existed at the time of, or prior to, the operation which excused the applicant from giving petitioner an opportunity to offer whatever surgery was necessary. Dr. Pheasant, an independent examiner appointed by the commission, reported on April 9, 1948, that an operation should be performed. Applicant's personal physician reported in January, 1949 that surgery was necessary and that he believed further delay would "seriously endanger the results which may be obtained by surgery." At the hearing on March 3, 1949, there was evidence that the applicant was confined to her bed nine-tenths of the time after December 5, 1947; that she was in constant pain and that her physician had been giving her empirin, codeine and sleeping pills. The evidence shows that during the week prior to the operation applicant was in extreme pain and was given demerol three times to relieve the pain; that following the third "shot" of demerol the applicant became paralyzed on the right side and her physician recommended an immediate operation and ordered her to go to the hospital. The surgeon, Dr. Shelden, who performed the operation, and with whom the applicant had previously consulted, told her to come to the hospital "right away." The referee, in his report regarding petitioner's request for rehearing on the supplemental award for medical expenses, stated that at the time applicant went to the hospital she "had reached the point of an emergency situation." The evidence amply supports the statement of the referee that an emergency existed when applicant went to the hospital. Under the circumstances here, where the petitioner had been contending for more than a year that an operation was not necessary, and where it had resisted her "Petition for

Surgery,'' and where an emergency operation had been ordered by qualified doctors of medicine in whom applicant had confidence, applicant was not required to give petitioner a further opportunity, prior to the operation, to furnish medical or surgical treatment. Presumably, applicant filed her ''Petition for Surgery'' in order to have it determined prior to the operation whether the petitioner should pay the expenses of the operation. The petition was filed on January 19, 1949, and was set for hearing on March 3, 1949—about six weeks after it was filed. Three weeks after the hearing, and while applicant was awaiting the commission's ruling upon the referee's recommendations, the emergency arose and at that time it was essential, in view of the advice of qualified physicians, that applicant proceed to incur the expenses of the operation without awaiting further the ruling upon her petition. In the case of *Newhall L. & F. Co.* v. *Industrial Acc. Com.,* 57 Cal.App. 115 [206 P. 769], the employee had refused the employer's offer to furnish surgery, but later he notified the employer and the commission that an immediate operation was necessary, and thereafter, while the employer was considering the matter and before the commission had made a ruling, the employee's condition became dangerous and he had the operation performed by a surgeon of his own choice. In that case the commission's award for expenses of the operation was affirmed.

Petitioner contends further that the employer is liable only for treatment reasonably required to cure or relieve from the effects of the injury. Petitioner argues principally that the award of $500 for the surgeon's fee was excessive; and that the award of $200 for practical nursing was erroneous since the services performed were, according to petitioner, domestic services. Those sums had been paid by the applicant and receipts therefor were filed with the commission. The evidence, on the hearing regarding the services for which such charges were made, showed that the sum paid to the surgeon was for a neurosurgical consultation, for a myelogram, and for the operation. The question as to whether the medical fee under the circumstances was reasonable was for the commission to determine. The commission found that the fee was reasonable, and there is nothing before this court which requires a different conclusion. As to the award of $200 for practical nursing, that amount was paid to a woman for services rendered over a period of two months after the applicant returned home from the hospital. Those services con-

sisted of "regular" nursing care, general housework and cooking. It appears that applicant left the hospital and returned to her home in order to reduce her medical expenses, and that her physician permitted her to return home on the condition that she have someone in her home to care for her. It is true that the services also included housework and cooking for applicant's husband and two sons. The woman's salary was $100 a month. If the applicant had remained in the hospital the expenses for her care would have exceeded the expense incurred at home. The commission was warranted in allowing that sum as a reasonable amount for practical nursing. The finding that certain other charges for medical treatment were reasonable is supported by the evidence. "In reviewing the findings of the commission, the courts are without power to disturb them unless there is a lack of substantial evidence. The courts are not concerned with conflicts. . . . Where there is substantial evidence to support the findings and order of the commission, the reviewing court may not substitute its views for those of the commission and annul the award. . . . If the findings of the Industrial Accident Commission are supported by inferences which may fairly be drawn from evidence, even though the evidence is susceptible of opposing inferences, the reviewing court will not disturb the award." (*Pacific Lbr. Co.* v. *Industrial Acc. Com.*, 22 Cal.2d 410, 422-423 [139 P.2d 892].)

The award is affirmed.

Shinn, P. J., and Vallée, J., concurred.