[Civ. No. 18264.   First Dist., Div. One.   Aug. 10, 1959.]

JULIA VIRGINIA NOE, Appellant, v. TRAVELERS
INSURANCE COMPANY (a Corporation), Respondent.

J. Adrian Palmquist, David M. McGahey and Francis T. Cornish for Appellant.

O'Connor, Moran, Cohn & Hall for Respondent.

TOBRINER, J.—Appellant's suit against her employer's insurance carrier for negligent delay in providing, and wanton misconduct in refusing, medical care raises the question whether such a liability can withstand the exclusive sweep of the Workmen's Compensation Act. As we explain in this opinion, we do not think it can.

The case comes to us upon the sustaining of a demurrer, without leave to amend, to a two-count complaint; we therefore accept as true the pleaded facts. Count One alleges that appellant on July 19, 1955, in the course of her employment with National Automotive Fibers, Inc., injured her back. Respondent served as the insurance carrier for this concern, and one of the benefits under that contract consisted of furnishing proper medical treatment to an injured employee.

Respondent did undertake to provide the promised medical care. In January of 1956 the doctor chosen by respondent for such purpose recommended and requested authorization for surgery. Despite repeated requests for such authorization, respondent only approved of the surgery 14 months later, on March 6, 1957. The complaint alleges that due to respondent's negligent failure to follow its own doctor's recommendations, appellant has been injured to the extent of $150,000.

Count Two contains all the allegations of Count One, but in addition states that defendant wilfully and wantonly both failed to perform its duty to provide medical care and also ignored its own doctor's recommendations. Appellant therefore seeks punitive damages in Count Two.

We first direct our attention to Count One.

Appellant's contention that the carrier's arrogation to itself of the authority to delay the operation gave it a third party status, subjecting it to liability additional to the code, and that the resultant development of the temporary into a permanent disability constituted a new and further injury calls for an analysis of the function and scope of the act. For the purpose of this discussion, since Labor Code, section 3850, provides "employer" includes "insurer" and since the insurer is subrogated to the rights and duties of the employer (*Fitzpatrick* v. *Fidelity & Casualty Co.* (1936), 7 Cal.2d 230, 233 [60 P.2d 276]), we shall treat the terms "employer" and "insurer" interchangeably.

Workmen's compensation contemplates a substitution of the contractual rights and obligations which normally flow between worker and employer with a complete and exclusive statutory scheme based not upon contract but upon status. The relationship of employer and employee itself generates the rights and obligations; the legislation describes the content and extent of those rights and obligations.

The obligation to provide medical treatment to the injured employee stems from the constitutional and statutory provisions. Article XX, section 21, of the California Constitution provides that the Legislature is "vested with plenary power . . . to create, and enforce a complete system of workmen's compensation. . . . A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen . . . to the extent of *relieving from the consequences of any injury* . . . sustained by workmen in the course of their employment . . . also . . . full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and *relieve from the effects of such injury; . . . .*" (Italics added.) Pursuant thereto the Legislature enacted a "complete system of workmen's compensation" (Lab. Code, § 3201) which specifies in section 4600 the employer's obligation to provide "[m]edical, surgical, and hospital treatment, including nursing, medicines, medical and surgical supplies . . . which is reasonably required to cure or relieve from the

effects of the injury. . . ." In case of the employer's "neglect or refusal reasonably to do so," the section provides, "the employer is liable for the reasonable expense incurred by or on behalf of the employee in providing treatment." "Controversies . . . arising under this chapter shall be determined by the commission. . . ." (§ 4604.)

The Legislature placed the exclusive power of enforcement of these obligations in the Industrial Accident Commission. Labor Code, section 5300, provides, "All the following proceedings shall be instituted before the commission and not elsewhere, except as provided in Division 4.

" (a) For the recovery of compensation, or concerning any right or liability arising out of or incidental thereto.

" (b) For the enforcement against the employer or an insurer of any liability for compensation imposed upon him by this division in favor of the injured employee. . . ." Section 5301 again explicitly states the commission commands "full power, authority and jurisdiction to try and determine finally all the matters specified in Section 5300. . . ." Relating back to the above quoted sections 4600 and 4604, pertaining to the obligation to provide medical care, section 5304 gives the commission "jurisdiction over any controversy relating to or arising out of sections 4600 to 4605 inclusive. . . ."

This correlation of rights and exclusive remedies of enforcement through the commission has, of course, found articulation in the cases. We initially consider four decisions which hold that the employer who fails to provide medical treatment must pay the costs of such care procured by the employee. Although we recognize that these cases do not reach our specific problem, that is, the liability of the employer for the consequences of such failure in the form of a temporary injury becoming permanent, the cases do define the nature of the obligation and the means of its enforcement.

*Pacific Indem. Co.* v. *Industrial Acc. Com.* (1948), 85 Cal. App.2d 490 [193 P.2d 117], declares medical treatment is a "benefit" under the act, covered as compensation under Labor Code, section 3202, and therefore exclusively within the jurisdiction of the commission. *Union Iron Wks.* v. *Industrial Acc. Com.* (1922), 190 Cal. 33 [210 P. 410], upheld the commission's award of the costs of an operation to an injured employee who, upon refusal of surgery by the employer's physicians, underwent successful surgery by a doctor of his own choice. The court held that such failure of "petitioners'

physicians to operate . . . was tantamount to a refusal to furnish the treatment seasonably required by the statute.'' (P. 40) *Draney* v. *Industrial Acc. Com.* (1949), 95 Cal. App.2d 64 [212 P.2d 49], likewise upholds the commission's award of costs of medical care upon failure of the employer to provide it. Finally *Pacific Elec. Ry. Co.* v. *Industrial Acc. Com.* (1950), 96 Cal.App.2d 651 [216 P.2d 135], sustains the commission in granting a petition for surgery at the employer's expense, after adequate notice of such request to the employer and his refusal to furnish such treatment.

The statutory provisions, as interpreted by these decisions, make it clear that the Legislature did contemplate a situation in which the employer or the compensation carrier refused reasonable medical and surgical care; the statutory scheme provides a remedy by petition to the commission. Our question narrows, then, to the right of such an employee to forsake the remedy and to obtain damages from the errant employer or carrier for the *injurious consequences* of its deficient or delayed performance of such service. In the words of appellant, ''[I]s an insurance carrier which steps beyond the position of carrier and directs the manner in which the injuries shall be treated . . . a 'third person' '' within the meaning of Labor Code, section 3852, which preserves the employee's actions for damages against ''any person other than the employer?''

Neither the cases nor the underlying legislation really support appellant's affirmative answer to this question. We initially discuss two cases which reject that position; then the decision upon which she relies; finally, the legislative considerations.

The first decision in substantial opposition to appellant, *Hazelwerdt* v. *Industrial Indem. Exchange* (1958), 157 Cal. App.2d 759 [321 P.2d 831], denies the liability of a carrier in a suit against an insurance company and a doctor employed by it premised upon the ground that the company conspired with the doctor to refuse ''to furnish plaintiff with any medical, hospital, surgical and psychiatric treatment, thereby compelling plaintiff to employ the services of private physicians.'' (P. 761.) The Second District Court of Appeal held the complaint did not state a cause of action, saying: ''In effect plaintiff's complaint asserts that defendant failed to provide him with certain medical and surgical treatment which he reasonably needed and which defendant was required to furnish pursuant to the mandate of the Industrial

Accident Commission. The allegations of conspiracy do not alter the nature of defendant's alleged acts and omissions. . . . Defendant's obligation to furnish such care was established by the Industrial Accident Commission pursuant to workmen's compensation law, and defendant's responsibility for failing to meet that obligation should also be determined before that tribunal.'' (P. 763.)

If the intervention of a third party in the form of a coconspirator does not transmute the employer's liability into that of a person other than the employer, the splitting of the employer's own identity into two parts cannot do so.

The second opposing case, *Penn* v. *Standard Accident Insurance Co.* (1957), 4 App.Div.2d 796 [164 N.Y.S.2d 618], holds "the charge" that a carrier delayed medical treatment for 21 days was "solely one of nonfeasance" and fell under the "exclusive remedy" of the Workmen's Compensation Law. (P. 620 [164 N.Y.S.2d].)

Appellant, however, places her main reliance upon *Duprey* v. *Shane* (1952), 39 Cal.2d 781 [249 P.2d 8]. There plaintiff, a practical nurse, employed by the Shane Diagnostic Foundation, a partnership owned by Dr. Shane and his wife, sustained an injury in the course of her employment. Dr. Shane and Dr. Harrison, a coemployee, treated the injury. Plaintiff received a workmen's compensation award but then sued both doctors for malpractice. Defendants demurred to the jurisdiction of the court; the demurrers were overruled, and a verdict for plaintiff ensued. On appeal the California Supreme Court affirmed, adopting Justice Peters' appellate opinion as its own, stating: " [W]here, as here, it is perfectly apparent that the person involved—Dr. Shane—bore towards his employee two relationships—that of employer and that of a doctor—there should be no hesitancy in recognizing this fact as a fact.'' (P. 793.)

The Shane case, in substance, is the antithesis of the instant one: there, the doctor who *was* the employer treated the employee negligently; the employer assumed no new role but exercised his preexisting one. Shane does not transform the employer *into* the doctor to fashion a new personality by some Svengali projection; it merely recognizes that the doctor who did treat the employee happened also to be her employer. In brief Shane *was* a doctor, and a living "third party" physician who affirmatively and medically treated the employee and did so negligently; here, we have no treatment, and no doctor, except the fictionalized one of an insurance company transformed into the spirit, the ghost, of one.

But, beyond the legalistic objection to appellant's position, we must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration. In the practical operation of the plan, minor delays in getting medical service, such as for a few days or even a few hours, caused by a carrier, could become the bases of independent suits, and these could be many and manifold indeed. The uniform and exclusive application of the law would become honeycombed with independent and conflicting rulings of the courts. The objective of the Legislature and the whole pattern of workmen's compensation could thereby be partially nullified.

It is true, however, that, as appellant argues, insurance adjusters should obtain no sanction in overruling or "directing competent physicians and surgeons." Flagrant interference by a carrier with rendition of medical care, such as described in this complaint, should generate swift relief in the commission. The courts support the commission in affording it. (*Pacific Elec. Ry. Co.* v. *Industrial Acc. Com.* (1950), 96 Cal.App.2d 651 [216 P.2d 135] ; *Simonton* v. *Industrial Acc. Com.* (1931), 119 Cal.App. 15 [5 P.2d 959].)

■ Appellant's further contention under Count One is that the carrier's disregard of "the advice of the physician constitutes a new injury, or breaks the chain of causation from the original injury" and hence supports an independent suit for damages. The theoretical rules of proximate causation do not hold that an omission to perform an act breaks "the chain of causation" (*Flies* v. *Fox Bros. Buick Co.* (1928), 196 Wis. 196 [218 N.W. 855, 60 A.L.R. 357]), and this is particularly pertinent when the "omission" consists of the breach of a duty imposed by a statute which affords its own remedy for that very breach.

Appellant frankly admits no California cases establish her position. Those she cites disclose a factual situation in which the employer or carrier committed an affirmative intervening act upon which liability fastened. Thus in *Aetna Life Ins. Co.* v. *Watts* (1931), 148 Okla. 28 [296 P. 977], the carrier directed the removal of the patient to a different hospital and in the course of transportation his broken leg suffered a further injury. *Pacific Coast Casualty Co.* v. *Pillsbury* (1915), 171 Cal. 319 [153 P. 24], involves "an additional injury to the employee from an accident . . . occurring after

the employment had ceased. . . ." (P. 323.) The cryptic opinion in *Ellamar Mining Co. of Alaska* v. *Possus* (1918), 247 F. 420 [159 C.C.A. 474], apparently rests upon a different rule than that of California as to an aggravation of the industrial injury by the treating doctor.

We are unable to inject into California law the thin distinction urged by appellant in the face of antithetical general rules and the untoward effect it may impose upon the statutory scheme which we have described above.

▪ Count II, which rests upon a "wilful" failure to furnish medical care which "did not occur in the performance of . . . [appellant's] duty as an employee" and therefore "is not limited by the provisions of the Labor Code," falls into the void of a failure to show an intervening personal assault of the employer or carrier.

The count relies upon *Conway* v. *Globin* (1951), 105 Cal. App.2d 495 [233 P.2d 612], in which the Third District Court of Appeal held that "allegations that the plaintiff's injuries resulted from the defendant employer's wilful attack upon plaintiff" describe an injury "which is not a risk or condition of the employment" (p. 498) and hence an independent suit is not barred by the act. The case and any liability conceivably arising from it involves the rare situation "where the employer, an individual, personally committed a wilful, malicious and intentional personal assault upon the employee. . . ." (18 Univ.Pitt.L.Rev. [1956-1957] 81, 90; 42 Cal.L.Rev. [1954] 852.) We have no counterpart to such facts here.

We affirm the judgment.

Bray, P. J., and Wood (Fred B.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 7, 1959.