[Civ. No. 11170. Third Dist. Oct. 7, 1965.]

STATE COMPENSATION INSURANCE FUND, Petitioner, v. SUPERIOR COURT OF SISKIYOU COUNTY, Respondent; VICTOR E. BRECEDA et al., Real Parties in Interest.

Van A. Hagenbaugh and Robert L. Fairman for Petitioner.

Thelen, Marrin, Johnson & Bridges, Edward J. Ruff, F. Britton McConnell and Gordon Johnson as Amici Curiae in support of Petitioner.

No appearance for Respondent.

Crow, Phillips, Clements & Lytle, Richard E. Crow, Hurley & Bigler, Mitchell & Henderson, Robert C. Dedekam, Sedgwick, Detert, Moran & Arnold and Edward T. Moran for Real Parties in Interest.

Edwards, Friborg & Duda, Frederick R. Duda and Lasher B. Gallagher in support of Real Parties in Interest.

PIERCE, P. J.—The issue we decide on this petition for a writ of prohibition is whether in California an employee injured in the course of his employment can maintain a common law cause of action in the superior court for negligence

against his employer's compensation insurer where the alleged negligence of the insurer is a failure to fulfill the insurer's commitments with the employer regarding safety inspections of the latter's plant.

Victor E. Breceda, a real party in interest, brought an action in the Superior Court of Siskiyou County framing the issue substantially as stated above. Petitioner, State Compensation Insurance Fund, demurred upon the ground that the court lacked jurisdiction, claiming that the Industrial Accident Commission, under the provisions of the Workmen's Compensation Law (Lab. Code, § 3201 et seq.) had exclusive jurisdiction. The trial court overruled the demurrer.

These proceedings are properly brought to test the court's ruling. (*Tidewater Assoc. Oil Co.* v. *Superior Court* (1955) 43 Cal.2d 815, 820 [279 P.2d 35]; *Citizens Utilities Co.* v. *Superior Court* (1963) 59 Cal.2d 805, 813 [31 Cal.Rptr. 316, 382 P.2d 356]; *Scott* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 76, 81 [293 P.2d 18].)

This is a case of first impression in California on the precise point in issue. Other California cases which we will discuss furnish guide lines. In four other jurisdictions the question has been determined in favor of court jurisdiction, but since the problem is one of statutory interpretation and the statutes there being interpreted differ from California's system of workmen's compensation laws, the force of *stare decisis* does not have the magnetic pull it otherwise would have.

Construing our workmen's compensation law we reach the conclusion that the Industrial Accident Commission has exclusive jurisdiction, although we deem the question a close one.

Facts pleaded (which for the purposes of this proceeding we accept as true) include the following: Breceda, on May 23, 1961, was employed by Arcata Lumber Services, Inc., in Siskiyou County. He suffered injuries when a pile of lumber fell on him while he was operating a forklift. He received a compensation award and medical expenses in proceedings before the Industrial Accident Commission. These were paid by petitioner as Arcata's compensation carrier. Breceda then brought the challenged superior court action. In the second count[1] of his second amended complaint he alleged that petitioner in its contract with Arcata assumed a duty, in addition to the usual obligations, to inspect the premises where Breceda

---

[1]Other causes of action against other allegedly negligent defendants are not here involved.

was working[2] and had either negligently failed to inspect them or in inspecting had performed the act negligently, proximately causing Breceda's injuries. It is also alleged the obligation thus assumed by petitioner was ''not only for the benefit of plaintiff's aforesaid employer, defendant ARCATA LUMBER SERVICES, INC., but also for the benefit of employees of said employer, of which employees plaintiff was one.''

The problem with which we deal is one of statutory interpretation. Labor Code section 3852 provides in part as follows:

''The claim of an employee for compensation does not affect his claim or right of action for all damages proximately resulting from such injury or death against any person *other than the employer.* . . .'' (Italics supplied.)

Labor Code section 3850 states:

''As used in this chapter:

''.          .          .          .          .          .          .          .          .          .          .

''(b) 'Employer' includes insurer as defined in this division.''

These two sections, however, cannot be construed by themselves. We must also consider certain policy provisions of the state Constitution and of the Labor Code and particular attention must be given to Labor Code sections 3300 and 3601. The former of the two sections defines, for general purposes, the word ''employer.'' It includes within that term the state, public agencies, individuals, and private and public corporations. There is no reference to the employer's insurer.

Section 3601 provides:

''(a) Where the conditions of compensation exist, the right to recover such compensation, pursuant to the provisions of this division is, except as provided in section 3706 [not here involved since it covers an employer's liability where there has been a failure to insure], the exclusive remedy for injury or death of an employee against the employer, . . .''

It will be noted that if the holding in this case could rest upon a literal reading of sections 3850 and 3852 it seems obvious petitioner's position must be upheld. The quoted

---

[2]The contract provision is: ''State Compensation Insurance Fund . . . DOES HEREBY AGREE . . . (3) To SERVE the Insured (a) by the inspection of work places covered by the Policy when and as deemed desirable by the Fund and thereupon to suggest to the Insured such changes or improvements as may operate to reduce the number or severity of injuries during work, and (b) upon notice of injury, by investigation thereof and by adjustment of any resulting claims in accordance with the law. . . .''

portion of section 3852 imports its converse, namely, that an employee does *not* have access to the court for claims against his employer. (This is also an express pronouncement in section 3601.) And since the Legislature has also declared that ''As used in this chapter'' employer includes the insurer, section 3852 and section 3850 being in the same chapter would seem, when read together, to constitute a legislative mandate granting exclusive jurisdiction to the Industrial Accident Commission for all claims by an employee against an insurer arising out of work-induced injuries.

But real-party-in-interest Breceda and the friends of the court who argue in his behalf decry rigidity of interpretation as applied to the statutes to be construed. They argue (1) that it is the general definition of ''employer'' of section 3300 which should be applied in construing section 3601 and that the latter section should be the focal center of decision here; that sections 3852 and 3850 can be ignored as being intended to have reference only to subrogation rights and procedure. They also argue (2) that when the whole philosophy of the law of workmen's compensation, insurance and safety is examined, the conclusion will be reached that actions such as this are outside the exclusive dominion of the Industrial Accident Commission because the insurer was not acting here as an insurer. We accept their approach and method of interpretation as sound. (See 45 Cal.Jur.2d, Statutes, §§ 117, 118, pp. 626, 627; *City of Palo Alto* v. *Industrial Acc. Com.* (1959) 175 Cal.App.2d 83, 85 [345 P.2d 586].) But we reach an opposite result.

Our search for meaning begins with a reading of article XX, section 21, of the California Constitution. That section vests the Legislature with ''plenary power . . . to create, and enforce a complete system of workmen's compensation, by appropriate legislation,'' the scope of which is broad. It includes and embraces liability on the part of all employers (1) to compensate their workmen and their dependents for injuries and death sustained in the course of employment, irrespective of fault: (2) to make *''full provision for securing safety in places of employment;''* (this we emphasize), (3) to make ''full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury;'' (4) to make ''full provision for adequate insurance coverage'' and to make *''full provision for regulating such insurance coverage in all its aspects''* (this, again, we emphasize) ; and (5) the Legislature

is granted plenary power to determine what agencies of adjudication shall have jurisdiction over disputes.[3]

Preceded by the Roseberry Act (Stats. 1911, ch. 399) and the Boynton Act (Stats. 1913, ch. 176) the comprehensive Workmen's Compensation Insurance and Safety Act which is the basis of our present Insurance and Labor Code sections covering the subject was adopted in 1917. (Stats. 1917, ch. 586.) Section 1 of this act describes it as an expression of the police power, and the legislative policy is declared in terms substantially those of the constitutional provision referred to and quoted above, including the provision that a complete system of workmen's compensation embraces not only injury and death benefits and medical, hospital and surgical care, but "full provision for securing safety in places of employment" and "full provision for regulating . . . insurance coverage in all its aspects."

The principles asserted in the constitutional section and the 1917 Act have been carried over into the Labor Code.[4]

The process of insuring thus is made an integral part of the system; as much so as the provisions granting the employee a right to compensation, medical care, etc. The function of insurance is stated by Mr. Hanna (2 Hanna: The Law of Employee Injuries and Workmen's Compensation (1954 ed.) p. 18), as follows: "Without a method of distributing costs more or less equally over all employers through insurance, workmen's compensation would hardly prove practicable. Small employers would constantly face the prospect of being completely wiped out of business by the heavy cost of a serious accident involving one or more employees. The employees themselves could never be certain of protection which was dependent upon the employer's individual solvency. . . ."

Demonstrating that the insurer is an integral part of the system is the provision made by the act that whenever the insurer has acknowledged the existence of its policy and has assumed liability it is substituted for the employer in all subsequent proceedings. The employer is thereafter relieved from liability. (Lab. Code, §§ 3755, 3757, 3758.) And the Insurance Code provides that each policy of compensation insur-

---

[3]This constitutional provision, adopted originally in 1911, was amended and materially broadened to include all of the above in 1918.

[4]Section 2 of the Labor Code provides: "The provisions of this code, in so far as they are substantially the same as existing provisions relating to the same subject matter, shall be construed as restatements and continuatio is thereof and not as new enactments."

ance shall contain a clause under which the insurer assumes direct and primary liability for any proper claim. (Ins. Code, § 11651.)

Obligation on the part of the employer as regards safety measures is explicit in several provisions of the act. (All references hereinafter are to the Labor Code.) By section 6400 he is required to furnish safe employment and places of employment; by section 6401 he is required to furnish and use safety devices and safeguards and use practices which are reasonably adequate to render employment safe. (See also §§ 6402, 6403 and 6404.) These and other provisions are tied into the public policy expressions of the constitutional provision quoted above. (§ 3201.)

We have stated that certain California cases give direction to the study of the problem here presented. The pilot state court case is *Fitzpatrick* v. *Fidelity & Casualty Co.* (1936) 7 Cal.2d 230 [60 P.2d 276]. There the employee, having suffered a compensable back injury, was treated by his personal physician, who applied a cast. When his claim was filed his employer's insurer required that he be examined. A complaint filed in the superior court alleged that one of these investigators (undoubtedly a physician) required removal of the cast, replacing it with another. This so aggravated the injury as to cause death. Demurrer to the complaint upon the ground that the superior court lacked jurisdiction was sustained. In affirming, the Supreme Court held that ''where the recovery for an injury sustained by or the death of an employee comes within the provisions of the Workmen's Compensation Act, the Industrial Accident Commission has exclusive jurisdiction and the superior court may not entertain an action for damages against the employer or his insurance carrier, the latter being subrogated *to all the rights and duties of the employer.*'' A Ninth Circuit case, *Sarber* v. *Aetna Life Ins. Co.* (1928) 23 F.2d 434, squarely in point, construing the California Workmen's Compensation Act was cited. In *Sarber* the court reasons thusly (on p. 435):

''. . . [W]e are of the opinion that the original accident was the proximate cause of the damages in this action, and the State Compensation Act provides what the Legislature has deemed just and adequate compensation for all such injuries. If we are correct in this conclusion, there is little room to doubt that the remedy thus provided is exclusive of all other remedies, common-law or statutory, as between the employee, on the one hand, and the employer and the insurance carrier,

on the other, and that the exclusive provisions of the Compensation Act cannot be evaded by bringing an action in some other form or under some other name.''

*Fitzpatrick, supra,* was followed in California by *Hazelwerdt* v. *Industrial Indemnity Exchange* (1958) 157 Cal.App. 2d 759 [321 P.2d 831], and by *Noe* v. *Travelers Ins. Co.* (1959) 172 Cal.App.2d 731 [342 P.2d 976]. Both reasserted the *Sarber-Fitzpatrick* rule on facts similar to those in *Fitzpatrick.* In both, Labor Code sections 3852 and 3850 are juxtaposed, and in *Noe* the court (per Justice Tobriner) states (on p. 733), ''We shall treat the terms 'employer' and 'insurer' interchangeably.'' It was stated in *Noe* (at p. 735) that appellant employee had asked the question: '' '[I]s an insurance carrier which steps beyond the position of carrier and directs the manner in which the injuries shall be treated . . . a ''third person'' ' within the meaning of the Labor Code, section 3852, which preserves the employee's actions for damages against 'any person other than the employer?' '' and the court answered, ''Neither the cases nor the underlying legislation really support appellant's affirmative answer to this question.'' One of the reasons asserted by Justice Tobriner for answering the question negatively was (as stated on p. 737): ''But, beyond the legalistic objection to appellant's position, we must point out that if delay in medical service attributable to a carrier could give rise to independent third party court actions, the system of workmen's compensation could be subjected to a process of partial disintegration.''

Breceda, in the instant proceeding, asks the same question that was asked in the *Noe* case. But here, it seems to us, he asks it in a situation where he stands upon a firmer footing. We summarize his argument: (1) Inspection of the employer's premises and operations is a duty which, although imposed by the workmen's compensation law upon the employer, is not imposed upon the insurer. To this extent the case differs from the *Fitzpatrick, Hazelwerdt* and *Noe* cases. (2) When an insurer, therefore, assumes such duties he steps out of his role as an insurer and assumes a new role in which he is, within the meaning of section 3852, a ''third person.'' (3) It is well-settled law, as the *Fitzpatrick, Hazelwerdt* and *Noe* cases all acknowledge, that, although the employer and insurer cannot be sued in the superior court for the negligent acts of their appointed doctor, the latter can be separately sued for his malpractice. (4) If an employer should contract out the duty of inspection to an independent safety engineer—other

than his insurer—clearly the latter would be liable in a court action for negligent performance of the contracted-for duty. In that situation the safety engineer would be a position no different from the negligent doctor hired to treat the employee. (5) Therefore, the rule should be the same when the insurer becomes, effectually, the safety engineer.

In support of this position Breceda cites *Duprey* v. *Shane* (1952) 39 Cal.2d 781 [249 P.2d 8]. In that case plaintiff, a nurse, suffered a work-induced injury. She was employed by a partnership of chiropractors. One of them, Dr. Shane, with an employed chiropractor, undertook to treat plaintiff's injury. Their negligence aggravated the injury. Plaintiff received a workmen's compensation award but then sued both chiropractors for malpractice. Demurrers were overruled, recovery was had and on appeal the California Supreme Court affirmed (adopting Justice Peters' appellate court opinion). That opinion reasoned that Dr. Shane bore towards his employee two relationships—that of employer and that of doctor —and when he stepped from one role to the other he must be considered as any other third-person doctor, and therefore was subject to court action as the Legislature in section 3852 provides.

Breceda's argument, bulwarked by the *Duprey* decision, is persuasive; but we cannot quite accept it.

We have seen that "safety in places of employment," in short, safe working conditions, is a vital and emphasized policy of this state, both under the Constitution and in the system of workmen's compensation laws adopted by the Legislature. Three things go together: (1) compensation (including medical, surgical and hospital care); (2) insurance and (3) safety. The very name of the original act: "Workmen's Compensation, Insurance and Safety Act" expresses the tripartite coverage and, as we have shown, the three are interrelated. True, the act imposes the duty to provide safe working conditions upon the employer but it is upon the insurer that the burden falls when that duty is negligently performed.

When the insurer, therefore, assumes a contracted-for duty to inspect is it really stepping from its role as insurer? We do not think so. We think it is performing a service which is inextricably interwoven with its status as insurer, one which it, with its greater resources, can better perform than can most employers, directly. Performance of the inspection service unquestionably benefits the employer. Admittedly, since the cost of inspection is reflected in the

premium charged, and since the service performed, by lessening the risk of injuries, will lessen compensation payments, the insurer does not act altruistically. But it is workmen as a class—the *uninjured* workmen injuries to whom are *prevented* by safety measures—who are the principal beneficiaries.

We are also impressed with the public policy argument that should the court accept Breceda's posit all compensation carriers would be compelled either to strike the provision for inspection from their policies or substantially raise their premiums to cover their exposure to greater monetary outlays; that working conditions left to the inexpert administration of employers, particularly the smaller ones, would deteriorate and that therefore one of the principal purposes of the system of workmen's compensation, namely, the fostering of safe working conditions, would be defeated. In seeking legislative intent courts must consider the consequences which will flow from a particular interpretation. (*Estate of Ryan,* 21 Cal.2d 498 [133 P.2d 626].)

We are impelled to and do hold, therefore, that the really unambiguous language of sections 3852 and 3850 should be accepted as expressing the legislative intent as applied to the fact here. Thus we assert that when an insurer assumes by contract the duty to inspect, it acts *as an insurer* and the Industrial Accident Commission has the exclusive jurisdiction to determine controversies between the employee and the insurer relating to the latter's performance of that obligation.

This we hold, notwithstanding the eminence of the authority cited on behalf of Breceda wherein an opposite conclusion was reached (*Mays* v. *Liberty Mutual Insurance Co.* (3d Cir. 1963) 323 F.2d 174). As we read that case, however, its reasoning is not antithetical to our ruling. It holds, reversing a United States District Court decision (211 F.Supp. 541), that an insurer which had assumed a duty to inspect was liable for its negligence in a court action. This ruling, however, was based solely upon the language of the Pennsylvania workmen's compensation law. That law in an early section (§ 21) had comprehensively defined "employer" and no reference was made including the employer's insurer. In a subsequent article of the act a section *did* state that "employer" was to include insurer "when used in this article." But the article referred to was one solely concerned with matters of procedure. It was not an article wherein a provision prohibiting court actions, a *substantive* provision, was contained. The court states (on p. 177): "In this respect the

definition in that section supports the position of *Mays,* for when the Legislature intended to equate the insurer with the employer, it did so specifically in unequivocal terms.''

Breceda, arguing to identify the rule in *Mays, supra,* with the instant case, says that the chapter in the Labor Code in which section 3850 appears is also concerned with a procedural aspect of workmen's compensation—the right of subrogation. That is quite true. He also argues that here, as in the *Mays* case, the general definition of ''employer'' excludes the insurer and that in section 3601, which provides that the ''exclusive remedy against the employer'' is in a proceeding before the Industrial Accident Commission ''where the conditions of compensation exist,'' no explicit identification of the insurer with the employer has been made.

All of that is also true. But, as we have shown, the California Supreme Court in *Fitzpatrick* v. *Fidelity & Casualty Co., supra,* 7 Cal.2d 230, has held—and without any reference to legislation expressly tying together the insurer and the employer—that a legislative intent to do so must be inferred from the whole legislative scheme whenever the insurer stays within its role of ''insurer qua insurer.'' We have held that here the insurer does not step beyond that role. Moreover in California the Legislature *has* been explicit. The chapter in which both sections 3852 and 3850 appear deals with more than the right of subrogation. It deals also with the substantive right of injured employees to bring court actions, expressly conferring the right when the action is against a third person, but denying the right when the claim is against the employer or the employer's insurance carrier. We use the words ''confers'' and ''denies'' advisedly. The Constitution expressly empowers the Legislature, as we have shown, ''to provide for the settlement of any disputes arising under such legislation by arbitration, or by an Industrial Accident Commission, by the courts, or by either, any, or all of these agencies, either separately or in combination.'' The Legislature by both sections 3601 and 3852 has exercised this power. Section 3601 does not explicitly include insurers but sections 3850 and 3852, supplementing it, when read together, do. It may be conceded that the Legislature in including section 3852 in the chapter in which it was put (Chapter 5) was merely selecting a convenient place since the rights of subrogation granted to employers and insurers are enjoyed and exercised in the actions against third parties authorized by that section. Nevertheless, section 3852 is the one section

in the entire act which expressly *grants* jurisdiction to the courts in claims against third party defendants and sections 3850 and 3852 read together are explicit legislative mandates denying court jurisdiction over claims against insurers qua insurers.

The holdings in the other cases cited (on behalf of Breceda), *Smith* v. *American Employers' Ins. Co.* (1960) 102 N.H. 530 [163 A.2d 564], *Fabricius* v. *Montgomery Elevator Co.* (1963) 254 Iowa 1319 [121 N.W.2d 361, 93 A.L.R.2d 591], and *Nelson* v. *Union Wire Rope Corp.* (1964) 31 Ill.2d 69 [199 N.E.2d 769], are unpersuasive, since all of them involved statutes where no attempt had been made by the Legislature to identify the insurer with the employer in the suit-authorization provisions of the act. In the last-mentioned case, *Nelson, supra,* the court expressly distinguishes cases under the California statute upon the ground that in our state insurance carriers have a primary liability and are substituted for the employer after the existence of insurance has been established.

The peremptory writ will issue as prayed for.

Friedman, J., and Regan, J., concurred.

The petition of real party in interest Breceda for a hearing by the Supreme Court was denied December 1, 1965.